Sam Yonga v. State of Maryland, No. 30, Sept. Term, 2015 Opinion by Battaglia, J.

**CRIMINAL PROCEDURE – NEWLY DISCOVERED EVIDENCE – WRIT OF ACTUAL INNOCENCE – MD. CODE ANN., CRIM. PROC. § 8-301 (2008 Repl.Vol., 2013 Supp.) –** Court of Appeals held that the Petition for a Writ of Actual Innocence, under Section 8-301 of the Criminal Procedure Article, was not available to an individual who earlier pled guilty to the same crime.

Circuit Court for Baltimore County,
Maryland
Case No. 03-K-07-0324
Argued: November 10, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 30
September Term, 2015

---

SAM YONGA

v.

STATE OF MARYLAND

---

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Harrell, Jr., Glenn T.
(Retired, Specially
Assigned)
McAuliffe, John F.
(Retired, Specially
Assigned),

JJ.

---

Opinion by Battaglia, J.

---

Filed: January 27, 2016

According to the statement of facts presented by the State during the guilty plea proceeding involving Petitioner, Sam Yonga, it was late in 2006 when Yonga, then a 25 year-old immigrant from Sierra Leone, traveled from Prince George's County to an apartment in Baltimore County to meet with T.R.,[1] a 13 year old girl who lived there with her mother. He had become acquainted with T.R. over a phone chat line some weeks earlier, during which conversation Yonga told T.R. that his name was Mohammad.

Yonga and T.R. decided to meet on a day that T.R. would pretend to be ill, in order to stay home from school. After they met at the apartment, the two began kissing, and Yonga, at times, touched T.R.'s breasts. Eventually, the pair moved to T.R.'s mother's bedroom; T.R. removed her clothing while Yonga took off his pants and underwear. After Yonga and T.R. moved to the bed, they began to have sexual intercourse when they were interrupted by the unexpected return of T.R.'s mother.

Yonga quickly left the apartment, and dropped his cell phone, which was retrieved by T.R.'s mother, who called police and reported the incident, after having learned Yonga's name and address from his mother whose phone number was in the cell phone. T.R.'s mother then took her daughter to a local clinic for an examination and for a shot of Depo-Provera, a birth control implant.[2]

---

[1] We shall refer to the victim, a minor at the time of the incident, by her initials.

[2] The complete statement of facts presented by the State at the plea proceeding included:

> [The State]: Your Honor, on November 3rd of 2006 [T.R.] was 13 years old. She lived in an apartment with her mother and younger chil – uh, siblings at 2532 Yorkway, Apartment A. On this particular day, uh, sir, it was Friday, uh [T.R.] was home from school. Uh, she had indicated that she was sick.

(continued . . .)

Prior to this date of the third of November, [T.R.] had gone on a phone chat line. It's a chat line where you dial in the number and you're connected with different people. In those connections she connected with the Defendant. He advised her that his name was Mohammad. Um, in the course of those discussions, um, it was decided that they would meet. [T.R.] would advise that the plan to meet was on this day when she feigned illness so she could stay home from school, um, and, in fact, the Defendant came to the home.

[T.R.] would advise when he came into the home they spoke briefly and there were times when they, uh, kissed. There were also times when he touched her breasts. Um, the Defendant, I would note for the record, is 25 – or was 25 years old at the time of this offense.

Ultimately [T.R.] would advise that they went into her mother's bedroom, they got on to the bed, uh, she had removed all of the clothes and the Defendant had removed his pants and underpants. Um, she would advise that the Defendant, uh, with his hand touched her in the vaginal area, um, also would advise that there was an attempt for penile penetration, it was very slight, and it was at this time that her mother came home unexpectedly.

Um, [T.R.] heard her mother coming in the house. Both of the individuals jumped up out of the bed, uh, [E.R.] went into the bedroom, observed the two to jump out of bed. She observed her daughter to grab clothing and sort of hide behind a dresser. She observed the Defendant to grab his pair of pants.

[E.R.] would advise that at this point she began screaming and said she was going to get a knife and cut off the Defendant's penis. Uh, the Defendant grabbed his pants and ran from the apartment without putting on his pants. In that fleeing of the apartment the Defendant had a cell phone in his pants pocket and the cell phone dropped.

Um, after the Defendant fled from the apartment [E.R.], uh, took the cell phone and scrolled through it, found what was listed as the Defendant's mother's phone number on the cell phone. Uh, [E.R.] dialed that number, told the Defendant's mother what had taken place. At that time, uh, the woman who identified herself as the Defendant's mother on the phone

(continued . . .)

(. . . continued)

provided [E.R.] with the Defendant's name, a phone number, as well as an address.

[E.R.] then took [T.R.] to a local clinic advising what had happened, asking for, um, an examination and determination with regard to, um, STDs as well as at that point she had a Depo-Provera shot which would be a, uh, birth control implant.

Um, after that took place the police were called. Uh, I would also advise that [E.R.] after the phone call with the Defendant's mother she then destroyed that cell phone. She smashed it. However, she provided to the officer who responded all of that information. The case was then turned over to, um, the Sex Offense Unit for investigation. That phone number, um, was given to Detective Hummel.

She made contact again with the woman who purported to be the Defendant's mother. She advised what she was investigating and that she needed to speak with the Defendant. Uh, she then advised the woman that, um, she would give the Defendant 48 hours to make contact so they could discuss this offense.

Uh, one call was received by Detective Hummel which was a hang-up call. A second call was made, still within the 48-hour period, where the Defendant identified himself by name. He stated that he had no idea why the detective was calling and that he had never been to Baltimore County. When the detective, um, further made inquiry about discussions – the particulars, the Defendant hung up.

Uh, based upon all of this information and conduct an arrest warrant was obtained. The Defendant's address was in, um, P.G. County. A request was made of Career Criminal to assist in the arrest. They got information regarding the Defendant's vehicle. They went to the initial address and, Your Honor, they noted, um, it was a new community and the address was wrong so they could not make entry based upon their arrest warrant because they had the wrong house number.

Um, they knocked on the door, got no response, asked Detective Hummel, who was still in Baltimore County, to make phone contact. Someone answered in the house and advised that yes, this was the house where the Defendant lived, but indicated he was not home.

(continued . . .)

3

Yonga initially denied knowing T.R. and denied having initiated sexual intercourse, but admitted to "kissing and touching" her on a porch outside the apartment.

Yonga was arrested and charged with second degree rape[3] and a third degree sexual offense. [4] He pled guilty to the third degree sexual offense during a colloquy

(. . . continued)

> The Career Criminal Squad would advise that they could see pretty clearly from the windows that, in fact, the Defendant was inside. This was on December 6 of 2006. Um, ultimately, uh, a number of people arrived. They wouldn't let people in. There was an attempt to get a search warrant now based upon the belief that the Defendant was inside. Before the search warrant was actually signed the Defendant, after three hours, came outside and submitted to being arrested. He was then transported to Baltimore County. He met with Detective Hummel in the Lansdowne, uh, precinct. She advised him of his rights per the Miranda decision. He elected to waive those rights and make a statement.
>
> He, um, initially again denied ever being in Baltimore County, having any knowledge of this young girl. As the interview progressed he said that yes, he met a girl on a chat line. He advised that the young girl told him, uh, that she was 19 years of age. He went on to say that when he ultimately met her she appeared to be younger than what he claimed to be her stated age of 19 years old.
>
> Uh, he said they initially met in the city, that they made a stop where he purchased her a, um, heart-shaped pillow, that they then went to her, um, home. He went on to say that they never went into the house, that, at most, they kissed and touched and that he was leaning between her legs out on the porch when a woman came out screaming and, uh, he ran fr- -- fled from the location.
>
> Your Honor, um, all events did occur in Baltimore County and that would be the statement to support the plea.

[3] Section 3-306 of the Criminal Law Article, which provides, in relevant part:
   (a) A person may not engage in a sexual act with another:
   (1) by force, or the threat of force, without the consent of the other;

(continued . . .)

4

conducted by Judge Dana Levitz, then an active judge of the Circuit Court for Baltimore County. During the colloquy, Judge Levitz assured that Yonga's plea was given freely, voluntarily and knowingly and that Yonga understood that the plea had been negotiated as one binding upon the Judge in terms of sentencing: [5]

> THE COURT: Now, I'm going to ask you a series of questions. My purpose in asking you the questions is not to get you to do anything. I'm not trying to get you to enter a guilty plea or not, but the law says I can't let

---

(. . . continued)
> (2) if the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual, and the person performing the sexual act knows or reasonably should know that the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual; or
> (3) if the victim is under the age of 14 years, and the person performing the sexual act is at least 4 years older than the victim.

Md. Code Ann., Crim. Law § 3-306 (1957, 2012 Repl. Vol.).

[4] Section 3-307 of the Criminal Law Article, governing third degree sexual offense, provides, in relevant part:
> (a) A person may not:

> *       *       *

> (3) engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim;

Md. Code Ann., Crim. Law § 3-307 (1957, 2012 Repl. Vol.).

[5] Rule 4-243 ("Plea Agreements") permits a judge to approve a plea agreement reached between the State and the defendant:
> *Approval of Plea Agreement.* If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

Rule 4-243(c)(3).

you enter a guilty plea unless you're doing it freely, voluntarily, knowingly and intelligently. I'm asking you the questions to satisfy myself that you are entering it under these conditions, so if I ask anything you don't understand, stop me. Say, Judge, I don't understand what you're asking me, and I'll try to explain it to you.

YONGA: Yes, sir.

THE COURT: Now, the State's Attorney and your lawyer have told me that you're entering a guilty plea in Case Number 07-K-324 to the third count which – excuse me, the second count, which charges you with third-degree sex offense which occurred on or about November the 3rd, 2006, and the third-degree sex offense was upon [T.R.].

In exchange for your plea to that charge the State will dismiss the more serious second-degree sex offense. In addition, the State and the Defense have agreed that the sentence that I will impose is 364 days. I'm going to suspend all but six months of the sentence and that six months will be served at the Baltimore County Detention Center. They've agreed that the sentencing will happen on the June the 4th.

That's what I understand to be the total plea agreement in this case. Is that your understanding of it?

YONGA: Yes, sir.

THE COURT: Has anyone made you any other promises, threats, inducements to get you to enter this plea?

YONGA: No.

*     *     *

THE COURT: How far did you go in school?

YONGA: Um, college level, university level.

THE COURT: All right. Are you now under the influence of alcohol, drugs or any other substance that's affecting your thinking?

YONGA: No, sir.

6

THE COURT: Have you ever been treated for a mental disease or a mental disorder?

YONGA: No, sir.

THE COURT: Are you now on probation or parole?

YONGA: No, sir.

THE COURT: As I understand it, you are a, um, a citizen of – is it Sierra Leone?

YONGA: Yes, sir.

Judge Levitz also advised Yonga of possible implications of the guilty plea on his immigration status:[6]

THE COURT: Okay, You understand that this guilty plea could have immigration consequences and if you are concerned about that then I urge you to talk to an immigration lawyer because I can't advise you about that. I have nothing to do with that. Do you understand that?

YONGA: Yes, sir.

Judge Levitz then explained to Yonga that, by pleading guilty, he was waiving various rights to which he would have been entitled during a trial and his right to appeal:

THE COURT: Okay. All right, so by proceeding in this way we don't have a trial where witnesses are called. You're giving up the right to have your lawyer cross examine the witnesses. You're giving up the right to produce witnesses on your own behalf. You're giving up the right to testify or remain silent.

If this were a trial you could sit next to Mr. Fatemi and you wouldn't have to say a word. You could just sit next to him. Nobody could make you get on the stand and admit you did anything.

---

[6] While the exact posture of Yonga's immigration status was never made clear, the State indicated during the plea proceeding that a document was obtained by the State "that could be presented for immigration purposes."

You're giving up the right to appeal by proceeding in this way, you're giving up the right to complain that anything the police may have done that you think violated your rights.

Judge Levitz then reinforced his commitment to be bound by the disposition agreed upon by the State and Yonga's counsel:

THE COURT: The sentence that the law would allow for this crime is ten years in prison but I've already told you the sentence that I'm going to impose in this case, so while that's what the law would allow I've already made you a promise that the sentence is going to be 364 days, suspend all but six months. Do you understand that?

YONGA: Yes, sir.

THE COURT: Do you understand everything that I've said so far?

YONGA: Yes, sir. Yes, sir.

Judge Levitz also inquired whether Yonga had "any additions, corrections or modifications to those facts?" to which Yonga's counsel replied:

MR. FATEMI: Uh, I think Madame State has, uh, properly went over, uh, what hap -- allegedly happened, just the fact that he never went in the house and in the statement he stated that he did not have sex.

Judge Levitz accepted Yonga's guilty plea:

THE COURT: Okay. All right. I've had occasion to speak with the Defendant and based on my opportunity I'm convinced that his plea is free, voluntary, knowing, informed and with factual basis, and accordingly I accept his guilty plea to third-degree sex offense.

During the sentencing hearing approximately one month later, at which Yonga's family allocuted regarding Yonga's mistake, Yonga expressed his remorse to the court:

Yes, sir. I'm very sorry. Really, really, really sorry. I made a mistake and I've learned a lot from it. I'm really, really, really – I'm so, I'm so deeply,

8

really sorry. It bothers me every day but, um, it's a mistake I made. I'm going through it, you know, I'm very, very, very sorry.

Pursuant to the plea agreement, Judge Levitz sentenced Yonga to 364 days in the Baltimore County Detention Center, with all but six months suspended. Yonga also was required to register as a sex offender.

Six years later, in 2013, after allegedly reconnecting with T.R. through social media, Yonga petitioned for a Writ of Actual Innocence, under Section 8-301 of the Criminal Procedure Article of the Maryland Code,[7] in which he alleged that T.R.

---

[7] Section 8-301 of the Criminal Procedure Article of the Maryland Code provided in 2013, and now, that:

(a) A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:
  (1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and
  (2) could not have been discovered in time to move for a new trial under Maryland Rule 4-331.

(b) A petition filed under this section shall:
  (1) be in writing;
  (2) state in detail the grounds on which the petition is based;
  (3) describe the newly discovered evidence;
  (4) contain or be accompanied by a request for hearing if a hearing is sought; and
  (5) distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions.

(c)(1) A petitioner shall notify the State in writing of the filing of a petition under this section.

(continued . . .)

"recanted" her original statements given to police. Judge Sherrie Bailey of the Circuit Court for Baltimore County denied Yonga's petition on the merits, after a hearing.

Yonga appealed the denial, arguing that Judge Bailey, in finding Yonga did not sufficiently establish newly discovered evidence as required under Section 8-301, erred. The State countered that the Writ of Actual Innocence was not applicable to a person who

---

(. . . continued)

   (2) The State may file a response to the petition within 90 days after receipt of the notice required under this subsection or within the period of time that the court orders.

(d)(1) Before a hearing is held on a petition filed under this section, the victim or victim's representative shall be notified of the hearing as provided under § 11-104 or § 11-503 of this article.
   (2) A victim or victim's representative has the right to attend a hearing on a petition filed under this section as provided under § 11-102 of this article.

(e)(1) Except as provided in paragraph (2) of this subsection, the court shall hold a hearing on a petition filed under this section if the petition satisfies the requirements of subsection (b) of this section and a hearing was requested.
   (2) The court may dismiss a petition without a hearing if the court finds that the petition fails to assert grounds on which relief may be granted.

(f)(1) In ruling on a petition filed under this section, the court may set aside the verdict, resentence, grant a new trial, or correct the sentence, as the court considers appropriate.
   (2) The court shall state the reasons for its ruling on the record.

(g) A petitioner in a proceeding under this section has the burden of proof.
Md. Code Ann., Crim. Proc. § 8-301 (2001, 2008 Repl. Vol., 2013 Supp.). All references to Section 8–301 of the Criminal Procedure Article throughout are to Maryland Code (2001, 2008 Repl. Vol., 2013 Supp.).

had pled guilty and, in the alternative, that the Circuit Court's denial on the merits was correct.

Our intermediate appellate court affirmed in a reported opinion. *Yonga v. State*, 221 Md. App. 45, 108 A.3d 448 (2015). Judge Charles E. Moylan, writing for the Court of Special Appeals, explained the history of Section 8-301 and its affinity to the motion for a new trial under Rule 4-331, determining, primarily, that "a non-reversed guilty plea is invulnerable to a Writ of Actual Innocence." *Id.* at 77, 108 A.3d at 467. The Court of Special Appeals also determined that Judge Bailey did not clearly err in her credibility determinations, and, therefore, did not abuse her discretion in denying Yonga's petition, although it emphasized that, "First and foremost is our primary holding that the Writ of Actual Innocence does not apply to a guilty plea." *Id.* at 99, 108 A.3d at 480.

We granted Yonga's petition for a writ of certiorari, *Yonga v. State*, 442 Md. 515, 113 A.3d 624 (2015), which presented the following questions:

> I. DOES THE STATUTORY WRIT OF ACTUAL INNOCENCE UNDER § 8-301 OF THE [CRIMINAL PROCEDURE] ARTICLE OF THE ANNOTATED CODE OF MARYLAND APPLY TO GUILTY PLEA CASES? [8]
>
> II. IF SO, IS IT CLEAR ERROR AND/OR AN ABUSE OF DISCRETION FOR A TRIAL JUDGE TO DENY A REQUEST FOR A NEW TRIAL BY THE PETITIONING PARTY WHERE THE ALLEGED VICTIM AND THE ONLY WITNESS DESCRIBED IN THE STATEMENT OF FACTS BOTH TESTIFIED THAT THE ALLEGED EVENTS NEVER

---

[8] Yonga, in his Petition for a writ of certiorari, referenced Section 8-301 of the Courts and Judicial Proceedings Article, although the Writ of Actual Innocence is actually found in the Criminal Procedure Article.

HAPPENED WHEN THE TRIAL JUDGE HAD HEARD TESTIMONY AT A HEARING UNDER § 8-301?[9]

In addressing the issue of whether an individual who pled guilty can later file a Petition for a Writ of Actual Innocence under Section 8-301 of the Criminal Procedure Article, we initially acknowledge that the statute is silent on the issue. The history of the legislation, our implementation through our Rules as well as our understanding of what "actual innocence" means, juxtaposed against what a guilty plea involves, however, inform our conclusion that a person who has pled guilty may not later avail himself or herself of the relief afforded by the Petition for a Writ of Actual Innocence.

Section 8-301(a) of the Criminal Procedure Article provides that "newly discovered" evidence is the foundation for a Writ of Actual Innocence, such evidence that would have created a "substantial or significant possibility" of a different result and which could not have been discovered within the time period required for a motion for a new trial:

> (a) A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed *if the person claims that there is newly discovered evidence* that:
>   (1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and
>   (2) could not have been discovered in time to move for a new trial under Maryland Rule 4-331.

---

[9] Because of our determination of the first issue, we shall not address the second.

Md. Code Ann., Crim. Proc. § 8-301 (emphasis added). Section 8-301 was enacted in 2009 by the Maryland General Assembly through the enactments of Senate Bill 486 ("S.B. 486") and House Bill 366 ("H.B. 366") and reconciliation in conference.[10] 2009 Maryland Laws, Chapter 744. Section 8-301 provides:

> **Claims of newly discovered evidence**
> (a) A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:
>> (1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and
>> (2) could not have been discovered in time to move for a new trial under Maryland Rule 4-331.
>
> **Petition requirements**
> (b) A petition filed under this section shall:
>> (1) be in writing;
>> (2) state in detail the grounds on which the petition is based;
>> (3) describe the newly discovered evidence;
>> (4) contain or be accompanied by a request for hearing if a hearing is sought; and
>> (5) distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions.
>
> **Notice of filing petition**
> (c)(1) A petitioner shall notify the State in writing of the filing of a petition under this section.

---

[10] Amendments to Section 8-301 were made the following year, in 2010, through an emergency bill, Senate Bill 135 (S.B. 135) and its accompanying House Bill (H.B. 128). 2010 Md. Laws, Chap. 233, 234. These amendments to Section 8-301 require the petitioner to notify the State in writing of the filing of the petition, provide the State with the right to file a response within ninety days or a period set by the court, requires notification to the victim or victim's family of the hearing and provide the victim or victim's family the right to attend the hearing.

(2) The State may file a response to the petition within 90 days after receipt of the notice required under this subsection or within the period of time that the court orders.

**Notice to victim or victim's representative**
(d)(1) Before a hearing is held on a petition filed under this section, the victim or victim's representative shall be notified of the hearing as provided under § 11-104 or § 11-503 of this article.

(2) A victim or victim's representative has the right to attend a hearing on a petition filed under this section as provided under § 11-102 of this article.

**Hearing**
(e)(1) Except as provided in paragraph (2) of this subsection, the court shall hold a hearing on a petition filed under this section if the petition satisfies the requirements of subsection (b) of this section and a hearing was requested.

(2) The court may dismiss a petition without a hearing if the court finds that the petition fails to assert grounds on which relief may be granted.

**Power of court to set aside verdict, resentence, grant a new trial, or correct sentence**
(f)(1) In ruling on a petition filed under this section, the court may set aside the verdict, resentence, grant a new trial, or correct the sentence, as the court considers appropriate.

(2) The court shall state the reasons for its ruling on the record.

**Burden of proof**
(g) A petitioner in a proceeding under this section has the burden of proof.

The history of the legislation reflects that Section 8-301 was intended to expand the

breadth of a motion for a new trial under Rule 4-331(c)(1). [11]

---

[11] Maryland Rule 4-331(c)(1) provides for the filing of a motion for a new trial based on newly discovered evidence:

   (c) **Newly Discovered Evidence**. The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could

(continued . . .)

14

In testimony submitted by Senator Delores Kelley, one of the sponsors of the bill, to the Senate Committee on Judicial Proceedings, she expressed the need for a vehicle for one who was "wrongfully convicted" to seek judicial review when "new evidence" came to the fore, when DNA was not an issue,[12] when a new trial motion was barred and "no claim of a constitutional defect involved in the case management and/or in the trial" was alleged:

> The fact is that in Maryland today, there is no recourse for a wrongfully convicted defendant in certain cases where none of the following applies:
>
> 1. where DNA evidence is not a factor under consideration;
>
> 2. where the 10-day post-conviction statute of limitations has expired for filing a motion for a new trial "in the interest of justice;" or
>
> 3. where there is no claim of a constitutional defect involved in the case management and/or in the trial.
>
> Since the development of new evidence sometimes takes more than a decade to materialize, when such evidence does become available in a case of a wrongfully convicted defendant, there should be an available

---

(. . . continued)
> not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:
>> (1) on motion filed within one year after the later of (A) the date the court imposed sentence or (B) the date the court received a mandate issued by the final appellate court to consider a direct appeal from the judgment or a belated appeal permitted as post conviction relief[.]

[12] Section 8-201 of the Criminal Procedure Article governing the procedures for challenging convictions based upon DNA testing had been enacted in 2001 following a national movement in the early '90s for post-conviction relief based upon scientific advances around DNA testing. *See Blake v. State*, 395 Md. 213, 218-19, 909 A.2d 1020, 1023 (2006) ("Section 8–201 was enacted in Maryland in 2001, in line with a nationwide trend to adopt post-conviction DNA testing statutes designed to provide an avenue for the exoneration of the actually innocent.").

15

mechanism for seeking judicial review, with the defense bearing the burden of proof.

The standard adopted by Section 8-301(a)(1) that newly discovered evidence would have to create "a substantial or significant possibility that the result may have been different," in the earlier trial, as with Rule 4-331(c)(1), was discussed in a letter contained in the bill file, authored by Suzanne Drouet, an attorney with the State Office of the Public Defender.[13] Ms. Drouet relied on a number of our opinions as well as others from our intermediate appellate court interpreting Rule 4-331(c)(1), as well as those involving ineffective assistance of counsel claims and *Brady* violations, [14] alleged by individuals convicted after a trial. In each of the cases cited we, as well as the Court of Special Appeals, emphasized the importance of having the judge who considered the newly discovered evidence evaluate its significance against that which had been developed at trial: "[t]he trial judge in the present matter weighed the newly discovered evidence and *considered its significance in relation to the evidence already presented at trial*." *Campbell v. State*, 373 Md. 637, 670, 821 A.2d 1, 20 (2003) emphasis added). *See also State v. Williams*, 392 Md. 194, 234, 896 A.2d 973, 996 (2006). Ms. Drouet also cited the

---

[13] "This language tracks the standard adopted by the Maryland Court of Appeals in a variety of situations involving the discovery of new evidence, including a motion for a new trial pursuant to Rule 4-331(c), ineffective assistance of counsel claims, and *Brady* violations[,]" according to the letter.

[14] A *Brady* violation involves "the suppression by the prosecution of evidence favorable to an accused upon request [and] violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." *Wilson v. State*, 363 Md. 333, 345, 768 A.2d 675, 681 (2001) (quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215, 215 (1963)).

following cases: *Wilson v. State*, 363 Md. 333, 352, 768 A.2d 675, 685 (2001) (concluding that the newly discovered evidence was material, because "had the evidence been disclosed, there is a substantial possibility that the verdict in the Petitioner's case would have been different"); *Bowers v. State*, 320 Md. 416, 430-31, 578 A.2d 734, 741 (1990) (the relevant inquiry is whether "a probability sufficient to undermine confidence in the outcome", had evidence been admitted, exists such that "the outcome might well have been different."); *Yorke v. State*, 315 Md. 578, 590, 556 A.2d 230, 235 (1989)("[T]he judge found that the newly discovered evidence, weighed with the evidence before the jury at the trial on the merits, did not affect the verdict to the extent that the outcome of the trial would be different."); *Jackson v. State*, 164 Md. App. 679, 713, 884 A.2d 694, 714 (2005) (a trial judge's discretion requires his assessing the weight and credibility of the new evidence, as he is "the only judicial figure who had his thumb on the pulse of the trial," and, therefore, "[his] exercise of discretion in evaluating credibility is indispensable."); *Love v. State*, 95 Md. App. 420, 433, 621 A.2d 910, 917 (1993) (identifying the applicable standard as whether the new evidence created a "substantial or significant possibility that the verdict of the trier of fact would have been affected" by its absence). The remaining documents contained in the bill file for S.B. 486, including its Floor Report, also echo the relationship between the "substantial probability" standards under Section 8-301 and Rule 4-331(c).[15]

---

[15] In *Douglas v. State*, 423 Md. 156, 176, 31 A.3d 250, 262 (2011), we recognized that Section 8-301 operated in much the same way as a motion for a new trial under Rule 4-331(c):

(continued . . .)

17

With respect to this legislative history, Yonga argues had the Legislature intended Section 8-301 to apply only to persons who had been convicted after trial that it would have placed such language directly in the statute. He refers to Virginia's Writ of Actual Innocence Statute, which expressly limits the availability of the writ to "a person who was convicted of a felony upon a plea of not guilty", in support of his position.[16]

---

(. . . continued)

> Furthermore, the legislative history of C.P. § 8–301 reflects a legislative purpose that the statute extend the right to seek a new trial on the basis of newly discovered evidence beyond that afforded a convicted defendant under Maryland Rule 4–331(c). The Fiscal and Policy Note that accompanied Senate Bill 486, which became C.P. § 8–301 in 2009, included the statement that the then-current law afforded a defendant relief under "Rule 4–331 . . . if newly discovered evidence exist[ed] that could not have been discovered by due diligence in time to move for a new trial within 10 days after the verdict." The Note also stated that defendants had one year within which to file Rule 4–331 motions based on newly discovered evidence. The Note mentioned, too, that Virginia law provided defendants the opportunity to present newly discovered evidence within 21 days after sentencing, which right the Virginia legislature "expanded . . . in 2004 to allow felons to submit new evidence other than DNA tests."

> \*        \*        \*

> We are persuaded that the remedy afforded under C.P. § 8–301, like the similar (albeit more restricted) remedy provided by a motion for new trial is necessarily part of "the usual procedures of trial and review" available to a criminal defendant that were not intended to fall within the scope of postconviction relief…

*Id.* at 176-77, 31 A.3d at 262-63 (internal citations omitted).

[16] Virginia's Writ of Actual Innocence Statute provides:

> Notwithstanding any other provision of law or rule of court, upon a petition of a person who was *convicted of a felony upon a plea of not guilty*, or the petition of a person who was *adjudicated delinquent, upon a plea of not guilty*, by a circuit court of an offense that would be a felony if committed by an adult, the Court of Appeals shall have the authority to issue writs of

(continued . . .)

Yonga also points us to House Bill 919 (H.B. 919), introduced by Delegates Curt Anderson and Kathleen Dumais in 2010, the year following the enactment of Section 8-301, which proposed numerous changes to the Petition for Writ of Actual Innocence. One of its many provisions, like the Virginia statute, would have explicitly limited the application of the writ only to a person who had entered a plea of not guilty to the crime charged.[17]

---

(. . . continued)

> actual innocence under this chapter. Only one such writ based upon such conviction or adjudication of delinquency may be filed by a petitioner. The writ shall lie to the circuit court that entered the conviction or the adjudication of delinquency and that court shall have the authority to conduct hearings, as provided for in this chapter, on such a petition as directed by order from the Court of Appeals.

Va. Code Ann. § 19.2-327.10 (emphasis added).

[17] Proposed H.B. 919; capital letters indicate language to be added to the existing law and brackets indicate proposed language to be deleted from the existing law, provided:

> 8–301.
>
> (a) [A convicted] IF A person IS CONVICTED OF A FELONY, AN ATTEMPT TO COMMIT A FELONY, OR A SOLICITATION TO COMMIT A FELONY AND THE PERSON ENTERED A PLEA OF NOT GUILTY TO THE CHARGES, THE PERSON MAY, at any time, [may] file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:
>
>> (1) creates a substantial [or significant] possibility that the result [may] WOULD have been different[, as that standard has been judicially determined]; and
>>
>> (2) could not have been discovered in time to move for a new trial under Maryland Rule 4–331.
>
> (b) A petition filed under this section shall:

(continued . . .)

19

(. . . continued)

        (1) be in writing;

        (2) state in detail the grounds on which the petition is based;

        (3) describe the newly discovered evidence;

        (4) contain or be accompanied by a request for hearing if a hearing is sought; and

        (5) distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions.

(c) THE COURT SHALL ALLOW THE STATE TO FILE A RESPONSE TO THE PETITION WITHIN 60 DAYS.

(D) (1) Except as provided in paragraph (2) of this subsection, the court shall hold a hearing on a petition filed under this section if the petition satisfies the requirements of subsection (b) of this section and a hearing was requested.

    (2) The court may dismiss a petition without a hearing if the court finds that the petition fails to state a claim or assert grounds on which relief may be granted.

[(d)] (E) (1) In ruling on a petition filed under this section, the court may [set aside the verdict, resentence,] grant a new trial[, or correct the sentence, as the court considers appropriate].

    (2) The court shall state the reasons for its ruling on the record.

[(e)] (F) A petitioner in a proceeding under this [section] SUBTITLE has the burden of [proof] PROVING THE GROUNDS ON WHICH RELIEF MAY BE GRANTED BY A STANDARD OF CLEAR AND CONVINCING EVIDENCE.

8–302.

(A) FOR EACH TRIAL OR SENTENCE IMPOSED, A PERSON MAY FILE ONLY ONE PETITION FOR RELIEF UNDER THIS SUBTITLE.

(B) A PETITION FOR RELIEF UNDER THIS SUBTITLE MAY BE FILED ONLY WITHIN 1 YEAR FROM THE DATE OF THE PETITIONER'S DISCOVERY OF THE NEWLY DISCOVERED EVIDENCE ALLEGED IN THE PETITION.

(continued . . .)

(. . . continued)

8–303.

(A) WITHIN 30 DAYS AFTER THE COURT PASSES AN ORDER IN ACCORDANCE WITH THIS SUBTITLE, A PERSON AGGRIEVED BY THE ORDER, INCLUDING THE ATTORNEY GENERAL AND A STATE'S ATTORNEY, MAY APPEAL TO THE COURT OF SPECIAL APPEALS.

(B) (1) THE APPEAL SHALL FOLLOW THE FORM AND PROCEDURE SET BY THE MARYLAND RULES.

(2) IF THE ATTORNEY GENERAL OR A STATE'S ATTORNEY FILES AN APPEAL UNDER THIS SECTION, THE COURT MAY:

(I) STAY THE ORDER; AND

(II) SET BAIL FOR THE PETITIONER.

(3) AFTER HEARING AN APPEAL UNDER THIS SECTION, THE COURT OF SPECIAL APPEALS MAY:

(I) AFFIRM, MODIFY, OR REVERSE THE ORDER APPEALED FROM; OR

(II) REMAND THE CASE FOR FURTHER PROCEEDINGS.

(C) THE COURT OF SPECIAL APPEALS SHALL DIRECT THE POLITICAL SUBDIVISION IN WHICH AN ORDER IS PASSED TO PAY THE NECESSARY COSTS AND EXPENSES ASSOCIATED WITH ANY REVIEW UNDER THIS SECTION, INCLUDING ALL COURT COSTS, STENOGRAPHIC SERVICES, AND PRINTING, IF:

(1) A PERSON SEEKS REVIEW UNDER THIS SECTION WITHIN 30 DAYS AFTER JUDGMENT;

(2) THE COURT OF SPECIAL APPEALS HEARS THE APPEAL UNDER THIS SECTION; AND

(continued . . .)

H.B. 919 proposed changes to the wording of Section 8-301(a)(1), modifying the standard to be applied when evaluating newly discovered evidence.[18] Passage of the proposed bill would have also created a new section, 8-302, further limiting the petition to one motion per trial or sentence imposed and requiring that each motion be made within one year after discovery of the new evidence.[19] Other alterations to Section 8-301 would have required the court to allow the State to file a response to the petition within 60 days, modified the petitioner's burden of proof to that of clear and convincing evidence, added a new section 8-303 providing for appeals from orders issued pursuant to Section 8-301 and limited the court's relief to the grant of a new trial. The proposal also included the language upon which Yonga relies, that "If a person is convicted of a felony, an attempt to commit a felony, or a solicitation to commit a felony and the person entered a plea of not guilty to the charges[.]"

---

(. . . continued)

> (3) THE COURT OF SPECIAL APPEALS FINDS THAT THE PERSON IS UNABLE TO PAY THE COSTS OF THE REVIEW.

[18] Specifically, H.B. 919 proposed the removal of the word "significant" from the standard for newly discovered evidence and a narrowing of the evaluation of the evidence such that there was a substantial possibility that the result *would*, rather than may, have been different:

> (1) creates a substantial [or significant] possibility that the result [may] WOULD have been different[, as that standard has been judicially determined];

[19] Proposed Section 8-302 would provide:

> 8–302.
> (A) FOR EACH TRIAL OR SENTENCE IMPOSED, A PERSON MAY FILE ONLY ONE PETITION FOR RELIEF UNDER THIS SUBTITLE.
> (B) A PETITION FOR RELIEF UNDER THIS SUBTITLE MAY BE FILED ONLY WITHIN 1 YEAR FROM THE DATE OF THE PETITIONER'S DISCOVERY OF THE NEWLY DISCOVERED EVIDENCE ALLEGED IN THE PETITION.

Our jurisprudence regarding rejected legislation reveals that while intent may be discerned from legislative inaction, it is considered most appropriate generally only when a specific bill has been repeatedly brought to the General Assembly and rejected:

Although the failure of a single bill in the General Assembly may be due to many reasons, and thus is not always a good indication of the Legislature's intent, under some circumstances the failure to enact legislation is persuasive evidence of legislative intent. *See, e.g.*, *Lee v. Cline*, 384 Md. 245, 255–256, 863 A.2d 297, 303–304 (2004); *Arundel Corp. v. Marie*, 383 Md. 489, 504, 860 A.2d 886, 895 (2004) ("The Legislature [has] declined invitations to modify the rule as [appellant] wishes"); *Stearman v. State Farm*, 381 Md. 436, 455, 849 A.2d 539, 550–551 (2004) ("The refusal of the Legislature to act to change a [statute] . . . provides . . . support for the Court to exercise restraint and refuse to step in and make the change"); *In re Anthony R.*, *supra*, 362 Md. at 65–67, 763 A.2d at 144–145 (2000); *State v. Sowell*, 353 Md. 713, 723–724, 728 A.2d 712, 717–718 (1999) ("We have recognized that the General Assembly's failure to amend . . . sometimes reflects its desired public policy"); *State v. Bell*, 351 Md. 709, 723, 720 A.2d 311, 318 (1998) ("Therefore, by declining to adopt the proposed language of the amending bill, the Legislature clearly did not intend" to adopt the result being urged); *State v. Frazier*, 298 Md. 422, 459, 470 A.2d 1269, 1288 (1984) ( "All of these proposals [supporting different views of a statute advocated by the parties] were rejected by the General Assembly").

Legislative inaction is very significant where bills have repeatedly been introduced in the General Assembly to accomplish a particular result, and where the General Assembly has persistently refused to enact such bills. *See, e.g.*, *Arundel Corp. v. Marie*, *supra*, 383 Md. at 502–504, 860 A.2d at 894–896; *Stearman v. State Farm*, *supra*, 381 Md. at 455, 849 A.2d at 551 ("Every year since 2000, legislators have introduced bills in the General Assembly that would" accomplish what the appellant urges, but "[n]one of these bills were enacted"); *Bozman v. Bozman*, 376 Md. 461, 492, 830 A.2d 450, 469 (2003), quoting *Boblitz v. Boblitz*, 296 Md. 242, 274, 462 A.2d 506, 521 (1983) (The Court will decline to adopt a particular position "'where the Legislature repeatedly had rejected efforts to achieve legislatively that which we were asked to grant judicially'"); *Halliday v. Sturm*, 368 Md. 186, 209, 792 A.2d 1145, 1159 (2002) (The Court refused to adopt positions "that have been presented on several occasions to the General Assembly" and "[s]o far, the Legislature has chosen not" to adopt them); *Harrison v. Mont. Bd. of Educ.*, 295 Md. 442, 462, 456 A.2d 894,

904 (1983) ("It is thus important in the present case to note that in the period from 1966 through 1982, the General Assembly considered a total of twenty-one bills seeking [to adopt the appellant's position] . . . . None of these bills was enacted. Although not conclusive, the legislature's action in rejecting the proposed change is indicative of [its] intention"); *Kline v. Ansell*, 287 Md. 585, 590, 414 A.2d 929, 932 (1980); *Demory Brothers v. Bd. of Public Works*, 273 Md. 320, 326, 329 A.2d 674, 677 (1974).

*Moore v. State*, 388 Md. 623, 641-42, 882 A.2d 256, 266-67 (2005).

In the present case, H.B. 919, containing a number of provisions, received an unfavorable vote in the Judiciary Committee. The fact that the Committee vote was unfavorable regarding a multilayered bill is not persuasive that the Legislature was, in so doing, adhering to the viewpoint advocated by Yonga.

Moving forward, with respect to Rule 4-331(c)(1), which informed the standard adopted in Section 8-301(a)(1), its history reflects that the standard of "substantial or significant possibility that the result may have been different" was to be applied when a conviction resulted from a trial. The rule traces its origin to two Rules, 759 and 764. Rule 759(a) provided for a motion for new trial "in the interest of justice" in a criminal setting, but looked to Rule 567 which applied to civil cases for its procedural requirement:

> A motion for a new trial shall be made pursuant to Rule 567 (New Trial). A motion for a new trial shall be heard by the court in which the motion is pending. The court may grant a new trial if required in the interest of justice.[20]

---

[20] Rule 567, referenced in Rule 759(a), related to civil trials, such that a motion for a new trial was required to be filed within three days of the verdict, or judgment in a bench trial:

> A motion for a new trial as to all or part of the matters in controversy shall be filed within three days after the reception of a verdict, or, in case of a special verdict or a trial by the court within three days after the entry of a judgment *nisi*.

Rule 567(a) (1976).

Rule 759(a) (1976). Rule 764(b)(3) provided a vehicle for a motion for a new trial on the basis of newly discovered evidence "which by due diligence could not have been discovered in time" to comply with Rule 759:

> The court may, pursuant to a motion filed within the time set forth in subsection 1 of this section, grant a new trial or other appropriate relief on the ground of newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under section a of Rule 759 (Motions After Verdict).

Rule 764(b)(3) (1976).

In 1978, Rule 759(a) was merged with Rule 764(b)(3) to create a new rule, Rule 770, requiring that a motion for new trial be filed within three days of the verdict or within 90 days if based on newly discovered evidence:

> a. *Motion by Defendant*
> Upon motion of the defendant filed within three days after a verdict the court, in the interest of justice, may order a new trial.
>
> b. *Newly Discovered Evidence*
> Upon motion filed within 90 days after the imposition of sentence or within 90 days after receipt by the court of a mandate issued by the Court of Appeals or the Court of Special Appeals, whichever is later, a court may grant a new trial or other appropriate relief on the ground of newly discovered evidence, which, by due diligence, could not have been discovered in time to move for a new trial pursuant to section a of this Rule.

Rule 770 (1978).

When the rules were subsequently renumbered in 1984, Rule 4-331 replaced Rule 770, and the motion for new trial based on newly discovered evidence was shifted to paragraph (c), which permitted the filing of the motion when the evidence was not discoverable by due diligence in time to file within the time limitation specified under

paragraph (a).[21] Rule 4-331 (1985). Rule 4-331(c)(1), in its current form, provides for

filing a motion for a new trial based on newly discovered evidence within one year from

the date of the sentence or mandate. Rule 4-331(c)(1) provides:

> (c) Newly Discovered Evidence. The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:
>
> > (1) on motion filed within one year after the later of (A) the date the court imposed sentence or (B) the date the court received a mandate issued by the final appellate court to consider a direct appeal from the judgment or a belated appeal permitted as post conviction relief[.]

---

[21] Rule 4-331 initially provided, in relevant part:

> (a) **Within Ten Days of Verdict.** – On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial.
>
> (b) **Revisory Power.** – The court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial:
> > (1) in the District Court, on motion filed within 90 days after its imposition of sentence if an appeal has not been perfected;
> > (2) in the circuit courts, on motion filed within 90 days after its imposition of sentence.
>
> Thereafter, the court has revisory power and control over the judgment in case of fraud, mistake, or irregularity.
>
> (c) **Newly Discovered Evidence.** – The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:
> > (1) in the District Court, on motion filed within one year after its imposition of sentence if an appeal has not been perfected;
> > (2) in the circuit courts, on motion filed within one year after its imposition of sentence or its receipt of a mandate issued by the Court of Appeals or the Court of Special Appeals, whichever is later.

Rule 4-331 (1985).

Rule 4-331 (2013).

No case has been located, nor have the parties provided a citation to any, in which a motion for new trial under Rule 4-331(c)(1) has been asserted when the proponent pled guilty. In every case found, the opinion grappled with whether there was a substantial possibility that a different result would have occurred in the trial, whether jury or bench, as a result of the newly discovered evidence. *See Grandison v. State*, 425 Md. 34, 38 A.3d 352 (2012); *Evans v. State*, 382 Md. 248, 855 A.2d 291 (2004); *Campbell*, 373 Md. at 637, 821 A.2d at 1; *Argyrou v. State*, 349 Md. 587, 709 A.2d 1194 (1998); *Wiggins v. State*, 324 Md. 551, 597 A.2d 1359 (1991); *Yorke*, 315 Md. at 578, 556 A.2d at 230; *Stevenson v. State*, 299 Md. 297, 473 A.2d 450 (1984) (motion for a new trial under then Rule 770 b); *Crippen v. State*, 207 Md. App. 236, 52 A.3d 111 (2012); *Ramirez v. State*, 178 Md. App. 257, 941 A.2d 1141 (2008); *Fields v. State*, 168 Md. App. 22, 895 A.2d 339 (2006); *Mack v. State*, 166 Md. App. 670, 891 A.2d 369 (2006); *Jackson*, 164 Md. App. at 679, 884 A.2d at 694; *Gravely v. State*, 164 Md. App. 76, 882 A.2d 889 (2005); *Newman v. State*, 156 Md. App. 20, 845 A.2d 71, *rev'd*, 384 Md. 285, 863 A.2d 321 (2004); *Berringer v. Steele*, 133 Md. App. 442, 758 A.2d 574 (2000); *Love*, 95 Md. App. at 420, 621 A.2d at 910; *Bloodsworth v. State*, 76 Md. App. 23, 543 A.2d 382 (1988).

In *Campbell*, for example, we reiterated the importance of the trial judge's role in weighing that which was newly discovered against evidence presented during the earlier trial, noting that, "This Court long has recognized that *a new trial may be granted by the judge in a criminal case tried to a jury.*" 373 Md. at 655, 821 A.2d at 12 (emphasis added). In affirming Campbell's conviction, we recognized that, "The trial judge in the

present matter weighed the newly discovered evidence and *considered its significance in relation to the evidence already presented at trial.*" *Id.* at 670, 821 A.2d 20 (emphasis added). We concluded in that case that the trial judge did not "exceed" his discretion in determining the newly discovered evidence was unlikely to have led to a different result:

> The trial judge "felt the pulse of the trial" and was entitled to rely on his own impressions to determine, without exceeding the limits of his discretion, that the new evidence bearing on [the witness's] trustworthiness was not substantially likely to tip the balance in favor of [the defendant].

*Id.* at 672, 821 A.2d at 21.

Yonga, though, asserts one of our recent cases, *State v. Matthews*, 415 Md. 286, 999 A.2d 1050 (2010), undermines the conclusion that to invoke Section 8-301 one must have been convicted after trial. In the case, Matthews had pled guilty to second degree murder and use of a handgun in the commission of a felony or crime of violence. Following a string of unsuccessful motions and petitions for post-conviction relief that consumed six years, Matthews filed a motion for a new trial based on newly discovered evidence, which was denied without a hearing. Matthews appealed, arguing that under Rule 4-331(c)(1) he was entitled to a hearing on his motion. Our intermediate appellate court agreed with Matthews, and we granted certiorari to address whether a hearing was required under 4-331(c)(1).

We held that because Section 8-301 had been enacted while the case was pending and there was a dearth of "rules of procedure to guide the process" Matthews's motion for a new trial, untimely under Rule 4-331(c)(1), could be treated as a Petition for Writ of

28

Actual Innocence and we left the issue of whether the petition met the requirements of

the statute for the circuit court to address:

> Consequently, we shall vacate the judgment of the Court of Special
> Appeals, with instructions to vacate the judgment of the Circuit Court and
> to remand, so that the Circuit Court may consider Matthews's motion as a
> Petition for Writ of Actual Innocence. Whether the alleged newly
> discovered evidence "could not have been discovered in time to move for a
> new trial under Maryland Rule 4–331," Section 8–301(a)(2) of the Criminal
> Procedure Article, whether Matthews's motion satisfies the requirements of
> Section 8–301(b), whether a hearing is required under Section 8–301(e),
> and whether counsel should be appointed, we leave for the Circuit Court to
> address.

*Id.*, 415 Md. at 298, 999 A.2d at 1057. We, therefore, did not decide, as Yonga suggests,

that Matthews was <u>entitled</u> to proceed on a Writ of Actual Innocence.

Why, though, is a trial the appropriate vehicle against which we measure the

"substantial or significant possibility that the result may have been different"? Judge

Moylan, writing for the Court of Special Appeals, eloquently described the reasons why

trials present the essential paradigm in the weighing process against which the

"substantial or significant possibility" standard manifest in Rule 4-331(c)(1) and a

bedrock of 8-301 is measured:

> There is, however, no way to compare the trial that was with the trial that
> might have been when there was no trial that was. Where there was no trial,
> it would be utter speculation to attempt to construct what the imaginary trial
> might have consisted of. We may not hypothesize a mythical trial. The
> statement of facts offered in support of the guilty plea is only minimalist. A
> State's Attorney's Office going before a jury would almost certainly opt for
> a more maximal case of guilt. We do not know, therefore, what witnesses
> would have been called or what, under direct and cross-examination, they
> might have said. We do not know whether the appellant would or would not
> have testified and, if he did testify, how his testimony would have held up.
> We do not know what medical reports might have been submitted. There
> would be self-evidently no way to make the prescribed comparison. Newly

discovered evidence simply cannot be measured in the case of a conviction based on a guilty plea. With what cast of characters, moreover, would we people our hypothetical testing? Do we ask whether the hypothetical jury that might have rendered a guilty verdict after a hypothetical trial would probably have rendered a different verdict? Or do we ask, as in this case, whether Judge Levitz would still have accepted the guilty plea? These are very different questions. The criteria for rendering a trial verdict and the criteria for accepting a guilty plea are not remotely the same.

*Yonga*, 221 Md. App. at 68-69, 108 A.3d at 462. As a result of the different criteria utilized at trial and a guilty plea, the test of the persuasive weight of the newly discovered evidence contained in 8-301(a)(1), with its foundation in 4-331(c)(1), would not be applicable where the defendant had pled guilty:

> The acid test is to ask whether, if that jury had had the benefit of the newly discovered evidence as well as the evidence that was before them, would there be "a substantial or significant possibility that the result would have been different?" There is no way that such a test can be applied, however, to a conviction based on a guilty plea rather than upon a trial. The minimalist statement of facts offered in factual support of a guilty plea is no equivalent of or substitute for an actual trial. It was never intended to be.
>
> Generally speaking, we have no firm idea what the proof of guilt might have been that the jury might have heard because there was no jury and there was no trial. Would the State have mounted an "all out" strong prosecution or simply have put on an adequate prosecution? That could make a big difference. The answer might, of course, depend not simply on the availability of the evidence but upon such other imponderables as the adequacy of the staffing of the State's Attorney's Office at a given moment, the depth of the State's Attorney's budget at a given moment, or upon how busy or unbusy the Office was with other cases on its agenda at a given moment. Might the State, in a case such as this, have mounted a full-scale effort and hired expert computer technicians to retrieve the text of the chatting between Yonga and his victim? Such a text may not have been critical to the *actus reus* of rape, which may have been interrupted in the nick of time by the victim's mother. It could have been both revealing and devastating, on the other hand, as to Yonga's *mens rea*. It is not unheard of, moreover, where the *actus reus* is ambiguous enough that it could reasonably tilt in either direction, that a damning *mens rea* could nudge an unsympathetic jury in a given direction.

30

At such a purely hypothetical trial, moreover, might Yonga have invoked his right to silence? Under the facts of this case, such silence could have been fatal, whatever the Fifth Amendment instruction might be about not using his silence against him. Or if Yonga had taken the stand, how might he have stood up against rigorous and sustained cross-examination? We cannot know any of this and that is why the newly discovered evidence cannot possibly be measured against an unknown antecedent. Guilty pleas simply do not lend themselves to newly discovered evidence analysis. We would have no standard to measure the newly discovered evidence against. Q.E.D.

*Id.* at 69-70, 108 A.3d at 462-63. Thus, the weighing mechanism required by the "substantial or significant possibility" standard adopted in Section 8-301(a)(1), and judicially determined through Rule 4-331(c)(1), can only be utilized after a jury or bench trial resulting in conviction has occurred. *See Argyrou v. State*, 349 Md. 587, 600, 709 A.2d 1194, 1200 (1998) ("It may be said that the breadth of a trial judge's discretion to grant or deny a new trial is not fixed and immutable, it will expand or contract depending upon the nature of the factors being considered, and the extent to which its exercise depends upon the opportunity the trial judge had to feel the pulse of the trial, and to rely on his or her own impressions in determining questions of fairness and justice.").

In contrast, a guilty plea contains none of the facets of a trial, evidence production and credibility determinations, for example, that informs the court when evaluating whether the proffered newly discovered evidence had a substantial or significant possibility that a different result would have occurred. When an individual pleads guilty, credibility determinations are not tested, reliability and validity are not challenged, and relevance is not an issue. The gravamen of a guilty plea is whether it was undertaken by the accused "voluntarily, knowingly, and intelligently, with sufficient awareness of the

31

relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405, 162 L. Ed. 2d 143, 153 (2005) (internal quotation omitted). A trial judge, in accepting a guilty plea, is primarily concerned with insuring its validity, not with the weight of the evidence.

We agree, then, with our brethren on the Court of Special Appeals that only a conviction garnered after a bench or jury trial can provide the fodder against which the standard in Section 8-301(a)(1) can be measured. Our conclusion has been well articulated by one of our former members, Judge Alan Wilner, now retired, who as chair of the Standing Committee on Rules of Practice and Procedure presented to this Court Rule 4-332 to implement Section 8-301.[22] During a discussion on all fours with the issue

---

[22] Subsequent to the enactment of Section 8-301 and our decision in *Matthews*, Rule 4-332 was implemented in October 2011, adopting the standard provided under Section 8-301(a)(1) and embodied in Rule 4-331(c)(1) (emphasis added):

(a) Scope. This Rule applies to an action seeking a writ of actual innocence as provided by Code, Criminal Procedure Article, § 8-301.

(b) Filing; Caption. An action for a writ of actual innocence is commenced by the filing of a petition in the court where the conviction took place. The caption of the petition shall state the number of the criminal case to which the petition relates. If practicable, the petition shall be filed in the criminal action.

(c) Timing. A petition under this Rule may be filed at any time.

(d) Content of Petition. The petition shall be in writing, shall be signed by the petitioner or the petitioner's attorney, and shall state:

(1) the court in which the indictment or criminal information was filed and the file number of that case;

(continued . . .)

(2) if the case was removed to another court for trial, the identity of that court;

(3) each offense of which the petitioner was convicted, the date of the judgment of conviction, and the sentence imposed;

(4) if the judgment was appealed, the case number in the appellate court, a concise description of the issues raised in the appeal, the result, and the date of the appellate court's mandate;

(5) for each motion or petition for post-judgment relief, the court in which the motion or petition was filed, the case number assigned to each proceeding, a concise description of the issues raised, the result, and the date of disposition;

(6) that the request for relief is based on newly discovered evidence which, with due diligence, could not have been discovered in time to move for a new trial pursuant to Rule 4-331;

(7) a description of the newly discovered evidence, how and when it was discovered, why it could not have been discovered earlier, and, if the issue of whether the evidence could have been discovered in time to move for a new trial pursuant to Rule 4-331 was raised or decided in any earlier appeal or post-judgment proceeding, the identity of the appeal or proceeding and the decision on that issue;

(8) that the *newly discovered evidence creates a substantial or significant possibility, as that standard has been judicially determined, that the result may have been different, and the basis for that statement*;

(9) that *the conviction sought to be vacated is based on an offense that the petitioner did not commit*;

(10) if the petitioner is not already represented by counsel, whether the petitioner desires to have counsel appointed by the court and, if so, facts establishing indigency;

(11) that a copy of the petition, together with all attachments, was mailed to the State's Attorney of the county in which the petition was filed;

(12) the relief requested; and

(13) whether a hearing is requested.

(e) Notices.

(1) To State's Attorney. The petitioner shall send a copy of the petition with all attachments to the State's Attorney of the county in which the petition was filed.

(continued . . .)

(2) To Victim or Victim's Representative. Upon receipt of the petition, the State's Attorney shall notify any victim or victim's representative of the filing of the petition, as provided by Code, Criminal Procedure Article, § 11-104 or § 11-503.

(3) To Public Defender. If the petitioner has requested an attorney and has alleged inability to employ one, the court shall send a copy of the petition and attachments to the Collateral Review Division of the Office of the Public Defender.

(f) Response by State's Attorney. Within 90 days after receipt of the petition and attachments, the State's Attorney shall file a response, serve a copy on the petitioner, and, if indigency is alleged, send a copy to the Collateral Review Division of the Office of the Public Defender.

(g) Response by Public Defender. Within 30 days after the State files its response, or, if no response is timely filed, the expiration of the time allowed for the State's response in section (f) of this Rule, the Office of the Public Defender shall (1) enter its appearance, (2) notify the court in writing that it declines to provide representation to the petitioner, or (3) request from the court an extension of the time for deciding whether to provide representation to the petitioner and state a specific reason for the request.

(h) Amendments. Amendments to the petition shall be freely allowed in order to do substantial justice. If an amendment is made, the court shall allow the State a reasonable opportunity to respond to the amendment.

(i) Dismissal of Petition; Appointment of Counsel.

(1) Dismissal of Petition. Upon consideration of the petition and the State's response, the court may (A) dismiss the petition if it finds as a matter of law that the petition fails to comply substantially with the requirements of section (d) of this Rule or otherwise fails to assert grounds on which relief may be granted or (B) grant leave to amend the petition to correct the deficiency. If the court finds a lack of proper venue, the court shall transfer the petition to the court with proper venue.

(2) Appointment of Counsel. If the court finds that a petitioner who has requested the appointment of counsel is indigent and the Office of the Public Defender has declined to provide representation, the court may appoint counsel after the State has filed its response unless (A)

(continued . . .)

before us, Judge Wilner, responding directly to whether a guilty plea was an appropriate

vehicle against which an 8-301 petition could be measured, stated:

> Either version is appropriate for adoption by the Court.[23] Alternative B is the easier one, it simply tracks the statutory language . . . . At some point, or points, this Court will need to resolve them. The Court certainly can, if it wishes, adopt Alternative B and deal with those issues in the judicial context when they arise . . . . And the second [issue] is in what circumstances if any, <u>if any</u>, would it be legally possible for a court to find that the new evidence creates a significant possibility that the result would have been different if the conviction is based on a straight out guilty plea that was found to be knowing and voluntary and supported by a statement of facts that was sufficient to establish *prima facie* guilt . . . . Can a court legally conclude that the defendant did not commit the crime if, often under oath, the defendant knowingly and voluntarily told the judge taking a guilty plea that he did commit the crime. That he was pleading guilty because he

---

(. . . continued)
the court denies the petition as a matter of law or (B) counsel has already filed an appearance to represent the petitioner.

(j) Hearing.
(1) When Required. Except as provided in subsection (i)(1) of this Rule, the court shall hold a hearing on the petition if the petition substantially complies with the requirements of section (d) of this Rule and a hearing was requested.
(2) Right of Victim or Victim's Representative to Attend. A victim or victim's representative has the right to attend a hearing on the petition as provided under Code, Criminal Procedure Article, § 11-102.

(k) Burden of Proof. The petitioner has the burden of proof to establish a right to relief.

(l) Ruling.
(1) Actions of Court. If the court finds that the petitioner is entitled to relief, it may set aside the verdict or judgment of conviction, grant a new trial, re-sentence the petitioner, or correct the sentence.
(2) Reasons for Ruling. The court shall state the reasons for its ruling on the record.

[23] Two versions of Rule 4-332 were presented to this Court. Alternative B, which we adopted, followed the language included in Section 8-301(a)(1).

was guilty. When we took this back and looked at that, one thought is there is just no way. It's a direct contradiction. But, that there might be a basis for relief if one could imagine that the new evidence was such that it would not have allowed the statement of facts to be presented in the way that it was. But frankly, we couldn't think of any other circumstance in which the court could say, well, I'm now convinced by a preponderance of the evidence that you didn't commit the crime when you pled guilty and told the judge you were guilty.

As to whether newly discovered evidence might suggest the defendant would not have pled guilty, had the evidence been known at the time and its relation to actual innocence, Judge Wilner responded:

Now obviously the defendant would know whether he committed the crime or not, so, but I wouldn't have pled guilty because I could have a better shot at being acquitted. The only problem with that is how do you prove or disprove it? It's, you either believe the defendant when he says I wouldn't have pled guilty if I had known about this evidence and how does one test that?

We agree, as we did when we adopted Alternative B.

In conclusion, the history of the legislation, our implementation through our Rules as well as our understanding of what "actual innocence" means, juxtaposed against what a guilty plea involves, support our conclusion that a person who has pled guilty may not later avail himself or herself of the relief afforded by the Petition for a Writ of Actual Innocence.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY THE PETITIONER.**