William Todd Jamison v. State of Maryland, No. 6, Sept. Term, 2016 Opinion by Battaglia, J.

**CRIMINAL PROCEDURE – OTHER POSTCONVICTION REVIEW – DNA EVIDENCE—POSTCONVICTION REVIEW– MD. CODE ANN., CRIM. PROC. § 8-201 (2008 Repl. Vol., 2009 Supp.) –** Court of Appeals held that the Petition for DNA testing, under Section 8-201 of the Criminal Procedure Article, was not available to an individual who earlier entered an *Alford* plea, considered a guilty plea, to the same offense.

Circuit Court for Baltimore County,
Maryland
Criminal Case No. 90 CR 3657
Argued: September 9, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 6

September Term, 2016

_____

WILLIAM TODD JAMISON

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Hotten,
Getty
Battaglia, Lynne A. (Retired, Specially
Assigned),

JJ.

_____

Opinion by Battaglia, J.
Barbera, C.J. and McDonald, J., concur in
judgment.

_____

Filed: November 15, 2016

William Todd Jamison, Petitioner, was indicted in 1990 in Baltimore County on fifteen charges related to a sexual assault; the charges included: first degree rape, second degree rape, kidnapping, false imprisonment, first degree sexual offense, second degree sexual offense, third degree sexual offense, attempted murder, robbery, theft, assault, battery, and impersonating a police officer. Jamison, thereafter, entered an *Alford* plea[1] to first degree rape and kidnapping and was sentenced to life imprisonment plus 30 years.

In 2008, Jamison filed a Petition for DNA Testing, alleging that newly discovered slides containing cellular material from swabs taken from the victim's vulva, vagina, and endocervix needed to be tested:

> 41. The Slides constitute "scientific identification evidence" under Maryland Code of Criminal Procedure Section 8-201. The sperm on the Slides was apparently deposited by the sole suspect in this matter. A DNA test that excludes Mr. Jamison as the source of the sperm would compel the conclusion that he is innocent of the crimes for which he has been convicted and is incarcerated. Accordingly, the evidence in this case meets the standards for court-ordered DNA testing pursuant to Maryland Code of Criminal Procedure Section 8-201.

Judge Patrick Cavanaugh of the Circuit Court for Baltimore County granted Jamison's motion, and Orchid Cellmark of Dallas, Texas conducted the testing. Jamison, thereafter, filed a Motion to Vacate Conviction pursuant to Section 8-201 of the Criminal Procedure Article of the Maryland Code (2008 Repl. Vol, 2009 Supp.).[2] He contemporaneously

---

[1] An *Alford* plea "lies somewhere between a plea of guilty and a plea of *nolo contendere*" and "[l]ike a guilty plea and *nolo* plea, the *Alford* plea waives challenges to adverse rulings on pretrial motions and all procedural objections, constitutional or otherwise, limiting appeals to jurisdictional defects and challenges based on the propriety of the trial court's acceptance of the plea." *Bishop v. State*, 417 Md. 1, 19-20 (2010) (internal citations omitted). *See also North Carolina v. Alford*, 400 U.S. 25 (1970).

[2] Section 8-201 of the Criminal Procedure Article provides, in relevant part:

(continued . . . )

1

(a) *Definitions.* —

\*     \*     \*     \*

(2) "Biological evidence" includes, but is not limited to, any blood, hair, saliva, semen, epithelial cells, buccal cells, or other bodily substances from which genetic marker groupings may be obtained.

\*     \*     \*     \*

(5) "Scientific identification evidence" means evidence that:

(i) is related to an investigation or prosecution that resulted in a judgment of conviction;

(ii) is in the actual or constructive possession of a law enforcement agency or agent of a law enforcement agency; and

(iii) contains biological evidence from which DNA may be recovered that may produce exculpatory or mitigating evidence relevant to a claim of a convicted person of wrongful conviction or sentencing if subject to DNA testing

(b) *Filing of petition.* —Notwithstanding any other law governing postconviction relief, a person who is convicted of a violation of § 2–201, § 2–204, § 2–207, or §§ 3–303 through 3–306 of the Criminal Law Article may file a petition:

(1)  for DNA testing of scientific identification evidence that the State possesses as provided in subsection (j) of this section and that is related to the judgment of conviction; or

(2)  for a search by a law enforcement agency of a law enforcement data base or log for the purpose of identifying the source of physical evidence used for DNA testing.

(c) *New trial.* — A petitioner may move for a new trial under this section on the grounds that the conviction was based on unreliable scientific identification evidence and a substantial possibility exists that the petitioner would not have been convicted without the evidence.

(d*) Findings requiring DNA testing.* — (1)  Subject to subsection (e) of this section, a court shall order DNA testing if the court finds that:

(i)  a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and

(ii)  the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

(2)  A court shall order a data base search by a law enforcement agency if the court finds that a reasonable probability exists that the data base search will produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing.

(continued . . . )

filed a Petition for Writ of Actual Innocence pursuant to Section 8-301 of the Criminal

( . . . continued)

(e) *Notification of petition; response.* — (1)  A petitioner shall notify the State in writing of the filing of a petition under this section.

(2)  The State may file a response to the petition within 15 days after notice of the filing or within the time that the court orders.

\*          \*          \*

(g) *Timeliness of testing.* — (1)  Except as provided in paragraph (2) of this subsection, DNA testing ordered under subsection (d) of this section shall be conducted as soon as practicable.

(2)  Based on a finding of necessity, the court may order the DNA testing to be completed by a date that the court provides.

(h) *Payment of costs.* — (1)  Except as provided in paragraph (2) of this subsection, the petitioner shall pay the cost of DNA testing ordered under subsection (d) of this section.

(2)  If the results of the DNA testing that the court orders under this section are favorable to the petitioner, the court shall order the State to pay the costs of the testing.

(i) *Disposition upon receipt of results.* — (1)  If the results of the postconviction DNA testing are unfavorable to the petitioner, the court shall dismiss the petition.

(2)  If the results of the postconviction DNA testing are favorable to the petitioner, the court shall:

(i)  if no postconviction proceeding has been previously initiated by the petitioner under § 7–102 of this article, open a postconviction proceeding under § 7–102 of this article;

(ii)  if a postconviction proceeding has been previously initiated by the petitioner under § 7–102 of this article, reopen a postconviction proceeding under § 7–104 of this article; or

(iii)  on a finding that a substantial possibility exists that the petitioner would not have been convicted if the DNA testing results had been known or introduced at trial, order a new trial.

(3) If the court finds that a substantial possibility does not exist under paragraph (2)(iii) of this subsection, the court may order a new trial if the court determines that the action is in the interest of justice.

(4)  If a new trial is granted, the court may order the release of the petitioner on bond or on conditions that the court finds will reasonably assure the presence of the petitioner at trial.

\*          \*          \*          \*

All references to Section 8-201 the Criminal Procedure Article are to the Maryland Code (2008 Repl. Vol., 2009 Supp.), unless stated otherwise.

Procedure Article of the Maryland Code (2008 Repl. Vol., 2009 Supp.).[3] The State

responded on the merits but also raised the issue of Jamison's guilty plea as a defense:

> 11. In this case, the Defendant proceeded by way of a guilty plea. Even if the Cellmark evidence is reliable and admissible, its introduction into the guilty plea proceedings would not create a substantial possibility that Petitioner would not have been convicted based upon the overwhelming facts of guilt in this case.

Judge Vicki Ballou-Watts of the Circuit Court for Baltimore County held a

hearing on the motions in November of 2014 and during the next year, denied them.

Jamison filed a timely notice of appeal under Section 8-201(k)(6)[4] in which he raised the

following questions:

1. Did the Circuit Court err in holding that a petitioner under Section 8-201 must prove that it is "more than . . . 'likely'" that he would have been convicted but for new DNA evidence?
2. Did the Circuit Court abuse its discretion when it found that the underlying DNA testing conducted by Cellmark was not reliable?
3. Did the Circuit Court abuse its discretion when it found that evidence of DNA that matched neither the victim nor the defendant in the criminal action was not "favorable" to that defendant and did not produce a "substantial possibility" of a different result in that action?
4. Did the Circuit Court err when it rejected Dr. Perlin's probabilistic genotyping analysis of Appellant's expert as irrelevant and not generally accepted in the scientific community?
5. Did the Circuit Court consider improper factors in determining whether a new trial was warranted "in the interest of justice" under Maryland Code of Criminal Procedure Section 8-201(i)(3)?

---

[3] Jamison subsequently withdrew his Petition for Writ of Actual Innocence in 2016 following our decision in *Yonga v. State*, 446 Md. 183 (2016) in which we held that relief under Section 8-301 is not available to a person who has pled guilty.

[4] Section 8-201(k)(6) of the Criminal Procedure Article allows for direct appeals to this Court: "An appeal to the court of appeals may be taken from an order entered under this section."

Before us, the State not only responds on the merits, but also asserts that Jamison cannot avail himself of a Petition for DNA testing because he entered a plea rather than going to trial. We agree.

Section 8-201 permits post-conviction petitions for DNA testing of "scientific identification evidence," which is described in Section 8-201(a)(5) as evidence that:

    (i)   is related to an investigation or prosecution that resulted in a judgment of conviction;

    (ii)  is in the actual or constructive possession of a law enforcement agency or agent of a law enforcement agency; and

    (iii) contains biological evidence from which DNA may be recovered that may produce exculpatory or mitigating evidence relevant to a claim of a convicted person of wrongful conviction or sentencing if subject to DNA testing.

Section 8-201(d) articulates those findings that a court must make before ordering DNA testing:

(d) *Findings requiring DNA testing*. – (1) Subject to subsection (e) of this section, a court shall order DNA testing if the court finds that:
(i) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and
(ii) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

If the results of the DNA testing are unfavorable or favorable, Section 8-201(i) defines the consequences:

(i) *Disposition upon receipt of results*. – (1) If the results of the postconviction DNA testing are unfavorable to the petitioner, the court shall dismiss the petition.
(2) If the results of the postconviction DNA testing are favorable to the petitioner, the court shall:

5

(i) if no postconviction proceeding has been previously initiated by the petitioner under § 7-102[5] of this article, open a postconviction proceeding under § 7-102 of this article;

(ii) if a postconviction proceeding has been previously initiated by the petitioner under § 7-102 of this article, reopen a postconviction proceeding under § 7-104[6] of this article; or

(iii) on a finding that a substantial possibility exists that the petitioner would not have been convicted if the DNA testing results had been known or introduced at trial, order a new trial.

(3) If the court finds that a substantial possibility does not exist under paragraph (2)(iii) of this subsection, the court may order a new trial if the court determines that the action is in the interest of justice.

(4) If a new trial is granted, the court may order the release of the petitioner on bond or on conditions that the court finds will reasonably assure the presence of the petitioner at trial.

We acknowledge from the start that Section 8-201 is silent regarding whether a

person who has pled guilty is permitted or prohibited from pursuing a post-conviction

---

[5] Section 7-102 of the Criminal Procedure Article of the Maryland Code (2001, 2008 Repl. Vol.) provides:

(a) *In general.* – Subject to subsection (b) of this section, §§ 7-103 and 7-104 of this subtitle and Subtitle 2 of this title, a convicted person may begin a proceeding under this title in the circuit court for the county in which the conviction took place at any time if the person claims that:

(1) the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of the State;

(2) the court lacked jurisdiction to impose the sentence;

(3) the sentence exceeds the maximum allowed by law; or

(4) the sentence is otherwise subject to collateral attack on a ground of alleged error that would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy.

(b) *Requirements to begin proceeding.* – A person may begin a proceeding under this title if:

(1) the person seeks to set aside or correct the judgment or sentence; and

(2) the alleged error has not been previously and finally litigated or waived in the proceeding resulting in the conviction or in any other proceeding that the person has taken to secure relief from the person's conviction.

[6] Section 7-104 of the Criminal Procedure Article of the Maryland Code (2001, 2008 Repl. Vol.) allows the court to "reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice."

DNA test. Twenty-two states and the District of Columbia expressly permit those who

have pled guilty to seek post-conviction DNA testing,[7] and one state statute expressly

prohibits those who have pled guilty from accessing post-conviction DNA testing.[8] The

legislative history of Section 8-201 suggests, however, that the Legislature did not intend

for Section 8-201 to be available to those who have entered a guilty plea.

---

[7] Alaska Stat. § 12.73.010 (2014); Cal. Penal Code § 1405 (2001, 2016 Supp.); D.C. Code § 22–4133 (2016); Fla. Stat. § 925.11 (2001, 2016 Supp.); Haw. Rev. Stat. § 844D–130(a) (2005); Idaho Code Ann. § 19–4902 (2004, 2016 Supp.); 725 Ill. Comp. Stat. 5/116–3 (2009, 2016 Supp.); Iowa Code § 81.10 (2009); Ky. Rev. Stat. Ann. § 422.285 (2006, 2016 Supp.); La. Code Crim. Proc. Ann. art. 926.1 (2008, 2016 Supp.); Mass. Gen. Laws ch. 278A, § 3 (2015); Miss. Code Ann. § 99–39–5 (2015); N.H. Rev. Stat. Ann. § 651–D:2 (2016); N.M. Stat. § 31–1A–2 (2016); N.Y. Crim. Proc. Law § 440.30 (2012); N.C. Gen. Stat. § 15A–268 (2015); Okla. Stat. tit. 22, § 1373.2 (2003, 2016 Supp.); S.C. Code Ann., § 17–28–30 (2014); Tex. Code Crim. Proc. Ann. art. 64.03 (2007, 2016 Supp.); Utah Code Ann. § § 78B–9–301, 78B–9–402 (2010); Vt. Stat. Ann. tit. 13 § 5570(a) (2009); W. Va. Code § 15–2B–14 (2014); Wyo. Stat. Ann. § 7–12–312 (2015).

Some states have made judicial determinations that those who have entered a guilty plea are not barred from accessing post-conviction DNA testing. *See State v. Winslow*, 740 N.W.2d 794, 799 (Neb. 2007) (explaining that the statute contained broad language that "wrongfully convicted persons have an opportunity to establish their innocence through [DNA] testing," Neb. Rev. Stat. § § 29-4117 (2009), and that absent limiting language, the statute could not be construed to apply to only those convicted pursuant to a trial); *State v. Smith*, 119 P.3d 679, 683-84 (Kan. 2005) (determining that a person who pleads guilty is entitled to relief under its post-conviction DNA statute because the legislature was capable of limiting the availability of the statute if it had intended to, but the statute did not contain language denying post-conviction DNA testing to people who have pled guilty); *Weeks v. State*, 140 S.W.3d 39, 45 (Mo. 2004) (interpreting statutory language that referenced a guilty plea, "the clerk shall notify the court reporter to prepare and file the transcript of the trial or the movant's guilty plea and sentencing hearing if the transcript has not been prepared or filed," Mo. Rev. Stat. § § 547.035.5 (2002), as indicating legislative intent that those who have pled guilty are entitled to file a petition under the statute).

[8] Ohio's post-conviction DNA statute contains a provision that denies post-conviction DNA testing to those who have pled guilty. Ohio Rev. Code Ann. § 2953.72 (c)(2) (2015) ("An offender is not an eligible offender under division (C)(1) of this section regarding any offense to which the offender pleaded guilty or no contest.").

Before we forage into the woods of legislative intent,[9] however, we must explore

whether Jamison's *Alford* plea can be considered a guilty plea. We previously have

concluded that an *Alford* plea equates to a guilty plea. In *Bishop v. State*, 417 Md. 1, 20

(2010), we recognized that, "an *Alford* plea is the functional equivalent of a guilty plea"

because "[l]ike a guilty plea and *nolo* [*contendere*] plea, the *Alford* plea waives

challenges to adverse rulings on pretrial motions and all procedural objections,

constitutional or otherwise, limiting appeals to jurisdictional defects and challenges based

on the propriety of the trial court's acceptance of the plea." *Bishop*, 417 Md. at 20 (*citing

Ward v. State*, 83 Md. App. 474, 480 (1990)). In *Ward*, cited in *Bishop*, the Court of

---

[9] In *Blake v. State*, 395 Md. 213, 224-25 (2006), we reviewed the standard that applies when ascertaining legislative intent:

> We look first to the language of § 8–201. We apply the well settled rules of statutory construction in interpreting the statute before us. The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *See Oakland v. Mountain Lake,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006). In ascertaining legislative intent, we first examine the plain language of the statute, and if the plain language of the statute is unambiguous and consistent with the statute's apparent purpose, we give effect to the statute as it is written. *See Mackey v. Compass,* 391 Md. 117, 141, 892 A.2d 479, 493 (2006). If the language of the statute is ambiguous, we resolve the ambiguity in light of the legislative intent, considering the legislative history, case law, and statutory purpose. *See Comptroller v. Phillips,* 384 Md. 583, 591, 865 A.2d 590, 594 (2005). We consider both the ordinary meaning of the language of the statute and how that language relates to the overall meaning, setting, and purpose of the act. *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004). We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense. *Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005). We construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *Moore v. State,* 388 Md. 446, 453, 879 A.2d 1111, 1115 (2005).

Special Appeals recognized that, "we do not see how an *Alford* plea could be construed as anything short of a guilty plea." *Ward*, 83 Md. App. at 479.

The colloquy conducted in 1990 by Judge Barbara Kerr Howe of the Circuit Court for Baltimore County, when she took Jamison's *Alford* plea, reflects a rights' advisement for a guilty plea:

> THE COURT: You understand that by pleading guilty you're giving up constitutional rights to which you would otherwise be entitled?
> THE DEFENDANT: Yes
> 
> \* \* \*
> 
> THE COURT: You understand that by speaking today and entering the guilty plea that you are, in all respects, indicating that you are guilty?
> THE DEFENDANT: Yes
> [DEFENSE COUNSEL]: He understands that, your Honor, but he - - yeah.
> THE COURT: I understand.

Judge Howe then explained to Jamison that, by pleading guilty, he was waiving various rights:

> THE COURT: Do you understand that you are limited in your right to take an appeal from finding of guilt by this Court to four grounds? They can be whether or not this Court has proper jurisdiction; whether or not you're entering a plea voluntarily today; whether or not you would receive an illegal sentence from the Court and whether or not you have a competent attorney representing you. Do you plead guilty today of your own free will and without condition?
> THE DEFENDANT: Yes.
> THE COURT: Are you pleading guilty because you believe that the evidence against you is very strong and that a guilty plea is in your best interests?
> THE DEFENDANT: Yes.
> 
> \* \* \*
> 
> THE COURT: All right. Where did this offense take place?
> [DEFENSE COUNSEL]: Baltimore County, your Honor.
> THE COURT: In Baltimore County, sir?
> THE DEFENDANT: Yes.
> THE COURT: You understand that if the State proves that the offense took place - -
> [DEFENSE COUNSEL]: (Nodding head yes.)

9

THE COURT: -- any petition that you would make for right of appeal on that ground would probably not be particularly effective since Baltimore County would have been -- proved to the satisfaction of any Court to have been the proper jurisdiction in which this case should be tried?
THE DEFENDANT: (Nodding head yes.)
THE COURT: You understand that?
THE DEFENDANT: Yes.
THE COURT: You understand that unless I sentence you to an illegal sentence that you could not use that as a grounds to petition any court for an appeal?
THE DEFENDANT: (Nodding head yes.)
THE COURT: And you understand that the, the other grounds, the voluntariness of the plea, which we've just gone over, would -- the fourth and remaining ground for you to finally petition for a right to take an appeal? You understand?
THE DEFENDANT: (Nodding head yes.)
THE COURT: Are you pleading guilty today of your own free will?
THE DEFENDANT: Yes.

Judge Howe also acknowledged on the record that Jamison had signed a document

entitled "Defendant's Waiver of Constitutional Right on Plea of Guilty":

THE COURT: All right. In fact, you have actually signed Defendant's waiver of constitutional rights on a plea of guilt[y]; is that correct?
THE DEFENDANT: Yes.
THE COURT: You acknowledge your signature on this document?
THE DEFENDANT: Yes.
THE COURT: All right. And in that plea agreement you've indicated that other than those discussions that you've had with the State about a nol pros being entered by the State to any remaining counts in this case, 90-CR-3567 and all of the counts in 90-CR-3961, that those were the only negotiations that you had with the State --
THE DEFENDANT: (Nodding head yes.)

Judge Howe then accepted Jamison's plea, after hearing the State's recitation of the facts:

All right. I find the Statement of Facts sufficient to find this Defendant, William Jamison, in Case No. 90-CR-3657 guilty beyond a reasonable doubt and to a moral certainty of Count One, rape in the first degree under Article 27, Section 462 and guilty beyond a reasonable doubt and to a moral certainty of kidnapping under Article 27, Section 337, which is the third count of Case No. 90-CR-3657.

10

Certainly, our jurisprudence, as well as the logistics of Jamison's plea, support equating his *Alford* plea with a guilty plea. [10]

Turning now to Section 8-201, the statute's origins, before codification embodied in Chapter 418 of the 2001 Maryland Laws, are found in Senate Bill 694 ("S.B. 694"), Senate Bill 699 ("S.B. 699"), Senate Bill 15 ("S.B. 15"), and Senate Bill 84 ("S.B. 84"). S.B. 699 limited post-conviction DNA testing to those persons who were sentenced to death[11] and contained various requirements for a court to grant a petition for post-conviction DNA testing:

> (C) SUBJECT TO SUBSECTION (D) OF THIS SECTION, A COURT SHALL ORDER DNA TESTING IF THE COURT FINDS THAT:
> (1)    (I) THE EVIDENCE WAS NOT PREVIOUSLY SUBJECTED TO THE DNA TESTING THAT IS REQUESTED FOR REASONS BEYOND THE CONTROL OF THE PETITIONER; OR
> (II) THE TYPE OF DNA TEST BEING REQUESTED IS DIFFERENT FROM TESTS PREVIOUSLY CONDUCTED AND WOULD HAVE A REASONABLE LIKELIHOOD OF PROVIDING A MORE PROBATIVE RESULT THAN TESTS PREVIOUSLY CONDUCTED;
> (2) THE EVIDENCE CONTAINING DNA WAS SECURED IN RELATION TO THE CRIME FOR WHICH THE PETITIONER WAS CONVICTED;

---

[10] In *Jackson v. State*, 448 Md. 387 (2016), we affirmed the denial of a new trial under the post-conviction DNA statute after Jackson also had entered an *Alford* plea. In *Jackson*, the issue of whether an *Alford* plea barred access to post-conviction DNA testing, however, was not before us.

[11] S.B. 699 contained a provision that expressly limited the availability of the post-conviction DNA testing statute to those who were serving death sentences:
> (B)    NOTWITHSTANDING ANY OTHER LAW GOVERNING POSTCONVICTION RELIEF, A PERSON WHO IS CONFINED UNDER SENTENCE OF DEATH MAY FILE A PETITION FOR DNA TESTING OF EVIDENCE THAT THE STATE POSSESSES AND THAT IS RELATED TO THE JUDGMENT OF CONVICTION.

11

(3) THE EVIDENCE TO BE TESTED HAS BEEN SUBJECT TO A CHAIN OF CUSTODY SUFFICIENT TO ESTABLISH THAT IT HAS NOT BEEN SUBSTITUTED,TAMPERED WITH, REPLACED, OR ALTERED IN ANY MATERIAL ASPECT;
(4) IDENTITY WAS AN ISSUE IN THE TRIAL THAT RESULTED IN THE PETITIONER'S CONVICTION;
(5) A REASONABLE PROBABILITY EXISTS THAT THE DNA TESTING HAS THE SCIENTIFIC POTENTIAL TO PRODUCE RESULTS MATERIALLY RELEVANT TO THE PETITIONER'S ASSERTION OF INNOCENCE; AND
(6) THE REQUESTED DNA TEST EMPLOYS A METHOD OF TESTING GENERALLY ACCEPTED WITHIN THE RELEVANT SCIENTIFIC COMMUNITY.

S.B. 15 was similar to S.B. 699, albeit differing in its application to those convicted of a felony and its requirement of the testing requirements contained in S.B. 699.[12] S.B. 84 combined aspects of both S.B. 15 and S.B. 699, because it would have permitted those

---

[12] S.B. 15 provided in relevant part:
  (B) NOTWITHSTANDING ANY OTHER LAW GOVERNING POSTCONVICTION RELIEF, A PERSON WHO WAS CONVICTED OF AND SENTENCED FOR A FELONY MAY FILE A PETITION FOR THE DNA TESTING OF EVIDENCE THAT THE STATE POSSESSES AND THAT IS RELATED TO THE JUDGMENT OF CONVICTION.
  (C) SUBJECT TO SUBSECTION (D) OF THIS SECTION, A COURT SHALL ORDER DNA TESTING IF THE COURT FINDS THAT:
    (1) THE EVIDENCE TO BE TESTED WAS NEVER PREVIOUSLY SUBJECTED TO THE DNA TESTING THAT IS REQUESTED BECAUSE THE TECHNOLOGY FOR SUCH TESTING WAS NOT AVAILABLE TO THE PETITIONER AT THE TRIAL;
    (2) THE EVIDENCE CONTAINING DNA WAS SECURED IN RELATION TO THE CRIME FOR WHICH THE PETITIONER WAS CONVICTED;
    (3) IDENTITY WAS AN ISSUE IN THE TRIAL THAT RESULTED IN THE PETITIONER'S CONVICTION; AND
    (4) A REASONABLE PROBABILITY EXISTS THAT THE DNA TESTING WILL PRODUCE RESULTS MATERIALLY RELEVANT TO THE PETITIONER'S ASSERTION OF INNOCENCE.

12

convicted of a felony to petition for post-conviction DNA testing and required all six of

the testing requirements that S.B. 699 contained.[13]

S.B. 694 would have applied to persons convicted of a crime punishable by a term

of imprisonment of more than a year, but did not contain the six testing requirements of

---

[13] S.B. 84, as introduced, provided, in relevant part:

(B) NOTWITHSTANDING ANY OTHER LAW GOVERNING POSTCONVICTION RELIEF, A PERSON WHO WAS CONVICTED OF AND SENTENCED FOR A FELONY MAY FILE A PETITION FOR DNA TESTING OF EVIDENCE THAT THE STATE POSSESSES AND THAT IS RELATED TO THE JUDGMENT OF CONVICTION.

(C) SUBJECT TO SUBSECTION (D) OF THIS SECTION, A COURT SHALL ORDER DNA TESTING IF THE COURT FINDS THAT:

(1) (I) THE EVIDENCE WAS NOT PREVIOUSLY SUBJECTED TO THE DNA TESTING THAT IS REQUESTED FOR REASONS BEYOND THE CONTROL OF THE PETITIONER; OR

(II) THE TYPE OF DNA TEST BEING REQUESTED IS DIFFERENT FROM TESTS PREVIOUSLY CONDUCTED AND WOULD HAVE A REASONABLE LIKELIHOOD OF PROVIDING A MORE PROBATIVE RESULT THAN TESTS PREVIOUSLY CONDUCTED;

(2) THE EVIDENCE CONTAINING DNA WAS SECURED IN RELATION TO THE CRIME FOR WHICH THE PETITIONER WAS CONVICTED;

(3) THE EVIDENCE TO BE TESTED HAS BEEN SUBJECT TO A CHAIN OF CUSTODY SUFFICIENT TO ESTABLISH THAT IT HAS NOT BEEN SUBSTITUTED, TAMPERED WITH, REPLACED, OR ALTERED IN ANY MATERIAL ASPECT;

(4) IDENTITY WAS AN ISSUE IN THE TRIAL THAT RESULTED IN THE PETITIONER'S CONVICTION;

(5) A REASONABLE PROBABILITY EXISTS THAT THE DNA TESTING HAS THE SCIENTIFIC POTENTIAL TO PRODUCE RESULTS MATERIALLY RELEVANT TO THE PETITIONER'S ASSERTION OF INNOCENCE; AND

(6) THE REQUESTED DNA TEST EMPLOYS A METHOD OF TESTING GENERALLY ACCEPTED WITHIN THE RELEVANT SCIENTIFIC COMMUNITY.

S.B. 699. S.B. 694 was enacted, however, and did contain the six testing requirements

included in the three other Senate bills, specifically:

> (c) Subject to subsection (d) of this section, a court shall order DNA testing if the
> court finds that:
>   (1)  (i) The scientific identification evidence was not previously subjected to the
>        DNA testing that is requested for reasons beyond the control of the
>        petitioner; or
>        (ii) The type of DNA test being requested is different from tests previously
>        conducted and would have a reasonable likelihood of providing a more
>        probative result than tests previously conducted;
> (2) The scientific identification evidence was secured as provided in subsection (i)
> of this section, in relation to the crime for which the petitioner was convicted;
> (3) The scientific identification evidence to be tested has been subject to a chain of
> custody as provided under subsection (i) of this section that is sufficient to
> establish that it has not been substituted, tampered with, replaced, or altered in any
> material aspect;
> (4) Identity was an issue in the trial that resulted in the petitioner's conviction;
> (5) A reasonable probability exists that the DNA testing has the scientific potential
> to produce results materially relevant to the petitioner's assertion of innocence;
> and
> (6) The requested DNA test employs a method of testing generally accepted within
> the relevant scientific community.

Testing requirement number four, "Identity was an issue in the trial that resulted in the

petitioner's conviction," is of importance because some of our sister states have

interpreted similar language in post-conviction DNA statute cases to prohibit a person

who has pled guilty from obtaining such testing.

Pennsylvania's statute, for example, requires that identity had to have been an

issue in the proceedings in order for a court to grant post-conviction DNA testing:

"identity of or the participation in the crime by the perpetrator was at issue in the

proceedings that resulted in the applicant's conviction and sentencing." 42 Pa. Consol.

Stat. Ann. § 9543.1(c)(3)(i)(2007). In *Williams v. Erie County District Attorney's Office*,

14

848 A.2d 967, 972 (Pa. Super. Ct. 2004), the court determined that a person who pled guilty could not avail himself of the post-conviction DNA testing statute because of the identity requirement:

> In light of this language, we are constrained to interpret § 9543.1 to preclude application to an applicant who has pleaded guilty. Subsection 9543.1(c)(3) requires the applicant to demonstrate that the "identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction." *Id.* § 9543.1(c)(3)(i). We fail to see how this mandatory element of an applicant's *prima facie* case can be demonstrated where he pleaded guilty, thus nullifying any subsequent claim that the "identity of or the participation in the crime by the perpetrator was at issue." *Cf. [Commonwealth v.] Guth,* 735 A.2d [709] at 711 n. 3 [Pa. Super. Ct. 1999]. Indeed, on the plain language of the statute, such a claim also must fail because we do not read the statute's use of "proceedings" to encompass negotiations between the prosecution and the defense regarding plea bargains.

The Arkansas Supreme Court arrived at the same conclusion when interpreting its own statutory requirement that identity be at issue at trial as precluding those who have pled guilty from accessing the post-conviction DNA testing statute. In *Graham v. State*, 188 S.W.3d 893 (Ark. 2004), Graham had pled guilty to capital murder; thereafter he filed a petition for post-conviction DNA testing. Under the Arkansas statute in 2004, a person may file a motion for post-conviction DNA testing if, among other requirements, identity was an issue in the trial. Ark. Code Ann. § 16-112-202(b)(1) (2001). As a result, the court concluded that: '[i]n entering his plea of guilty, appellant admitted that he committed the offense. His identity was thus not in question." *Graham*, 188 S.W.3d at 896.

The implications of barring one who has pled guilty from accessing the post-conviction DNA testing by the inclusion of the identity language was iterated by Ronald

15

Weich, Counsel to The Justice Project, before the Maryland Senate Committee on

Judicial Procedures Regarding Post-Conviction DNA Testing, when he testified on the

four Senate bills:

> [T]here are documented cases in which innocent men, often those suffering from mental retardation or mental illness, actually confess and plead guilty to crimes they did not commit. Recent examples of such cases in the news include the Chris Ochoa case in Texas and the Earl Washington case in Virginia. These defendants could not claim that "identity was at issue" in their trials, yet access to post-conviction DNA testing exonerated them and freed them from prison.

The requirement of identity at issue was enacted, nevertheless, in 2001.

In 2003, the Legislature clarified the definition of "scientific identification

evidence" and "biological evidence," as well as clarified "under what circumstances a

court may order DNA testing" when Senate Bill 363 ("S.B. 363") was enacted, which

subsequently became Chapter 240 of the Laws of 2003. The 2003 amendment, when

enacted, became Section 8-201(c)(1) and (2), which continues to pertain to the present

day:

> (c) Subject to subsection (d)[14] of this subtitle, a court shall order DNA testing if the court finds that:
> > (1) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and
> > (2) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.[15]

---

[14] Subsection (d) remained the same as it had been in 2001.

[15] Amendments to Section 8-201 enacted in 2008 shifted the then-existing Section 8-201(c) to the current 8-201(d), which appears as follows:

> (d) *Findings requiring DNA testing.* – (1) Subject to subsection (e) of this section, a court shall order DNA testing if the court finds that:

(continued . . . )

16

When juxtaposed against the 2001 statute, the relevant language of Section 8-201(c) in 2003 reflects the following:

---

( . . . continued)

(i) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing.
(ii) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.
(2) A court shall order a data base search by a law enforcement agency if the court finds that a reasonable probability exists that the data base search will produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing.

17

| Section 8-201(c) (2001) | Section 8-201(c) (2003) |
| --- | --- |
| (c) Subject to subsection (d) of this section, a court shall order DNA testing if the court finds that<br>(1) (i) the scientific identification evidence was not previously subjected to the DNA testing that is requested for reasons beyond the control of the petitioner; or<br>(ii) the type of DNA test being requested is different from tests previously conducted and would have a reasonable likelihood of providing a more probative result than tests previously conducted;<br>(2) the scientific identification evidence was secured as provided in subsection (i) of this section, in relation to the crime for which the petitioner was convicted;<br>(3) the scientific identification evidence to be tested has been subject to a chain of custody as provided under subsection (i) of this section that is sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect;<br>(4) identity was an issue in the trial that resulted in the petitioner's conviction;<br>(5) a reasonable probability exists that the DNA testing has the scientific potential to produce results materially relevant to the petitioner's assertion of innocence; and<br>(6) the requested DNA test employs a method of testing generally accepted within the relevant scientific community. | (c) Subject to subsection (d) of this subtitle, a court shall order DNA testing if the court finds that:<br>(1) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing; and<br>(2) the requested DNA test employs a method of testing generally accepted within the relevant scientific community. |

In determining whether the 2003 amendment which omitted reference to "identity was at issue," was intended to permit a person who has pled guilty to access the DNA post-conviction statute, we are mindful of the fact that the purpose of the legislative

18

amendment was for "clarifying the definition of 'biological evidence'; clarifying the

definition of 'scientific identification evidence'; [and] clarifying under what

circumstances a court may order DNA testing." In *Chesek v. Jones*, 406 Md. 446, 462

(2008), we considered the implications of clarifying language when we addressed

whether a special committee created by the Legislative Policy Committee, a bi-partisan

committee of the Maryland General Assembly, had the same power as the Legislative

Policy Committee to issue subpoenas. We determined where the subsequent amendment

was passed for the purpose of "*clarifying* that the Legislative Policy Committee may

delegate its authority to issue subpoenas . . . to any committee created by the [Legislative

Policy Committee]," the "clarifying" purpose was indicative of the legislative intent,

which was not to create a new power but to acknowledge one that already existed. *Id.*

In *Western Security Bank v. Superior Court*, 933 P.2d 507 (Cal. 1997), the

Supreme Court of California evaluated whether an amendment to its anti-deficiency

statute for real property foreclosure actions, which was enacted as an emergency measure

to abrogate a California Court of Appeal's decision, meant what it said when the

amendment's stated purpose was "to confirm and clarify the law." The California

Supreme Court emphasized that the use of the term "clarify" meant that the "true

meaning of the statute remains the same":

> We assume the Legislature amends a statute for a purpose, but that purpose need
> not necessarily be to change the law. (Cf. *Williams v. Garcetti* (1993) 5 Cal.4th
> 561, 568, 20 Cal.Rptr.2d 341, 853 P.2d 507.) Our consideration of the surrounding
> circumstances can indicate that the Legislature made material changes in statutory
> language in an effort only to clarify a statute's true meaning. (*Martin v. California
> Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484, 116 P.2d 71; *GTE Sprint
> Communications Corp. v. State Bd. of Equalization* (1991) 1 Cal.App.4th 827,

19

833, 2 Cal.Rptr.2d 441; see *Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828, fn. 8, 114 Cal.Rptr. 589, 523 P.2d 629.) Such a legislative act has no retrospective effect because the true meaning of the statute remains the same. (*Stockton Sav. & Loan Bank v. Massanet* (1941) 18 Cal.2d 200, 204, 114 P.2d592; *In re Marriage of Reuling* (1994) 23 Cal.App.4th 1428, 1440, 28 Cal.Rpt r.2d 726; *Tyler v. State of California* (1982) 134 Cal.App.3d 973, 976–977, 185 Cal. Rptr. 49.)

*Id.* at 514.

In the present case, the legislative purpose in 2003 was to clarify the definition of "scientific identification evidence" and "biological evidence," as well as clarify "under what circumstances a court may order DNA testing." The removal of the language that identity be at issue at trial, thus, was not an indication that the Legislature intended to permit those who have pled guilty to file for post-conviction DNA testing.

The second basis for our holding that someone who has pled guilty may not avail himself of post-conviction DNA testing is found in the 2008 amendments to Section 8-201(i), [16] which added the following language to what a court can do after favorable

---

[16] The 2008 amendments to Section 8-201, embodied in Chapter 337 of the Laws of 2008 reflected (where brackets indicate deleted language and CAPITALS indicate added language):
> [(h)] (I) (1) If the results of the postconviction DNA testing are unfavorable to the petitioner, the court shall dismiss the petition.
>> (2) If the results of the postconviction DNA testing are favorable to the petitioner, the court shall:
>>> (i) if no postconviction proceeding has been previously initiated by the petitioner under § 7–102 of this article, open a postconviction proceeding under § 7–102 of this article; [or]
>>> (ii) if a postconviction proceeding has been previously initiated by the petitioner under § 7–102 of this article, reopen a postconviction proceeding under § 7–104 of this article; OR

(continued . . . )

20

results are gleaned: "(iii) on a finding that a substantial possibility exists that the petitioner would not have been convicted if the DNA testing results had been known or introduced at trial, order a new trial." The added language includes two components, the first being an evaluative component requiring that the petitioner show a "substantial possibility exists that the petitioner would not have been convicted if the DNA testing results had been known or introduced," and the second is a trial.

Similar components were the subject of our analysis in *Yonga v. State,* 446 Md. 183 (2016), in which we held that someone who had pled guilty could not avail himself or herself of Writ of Actual Innocence, when the pertinent language of Section 8-301(a) of the Criminal Procedure Article of the Maryland Code (2008 Repl. Vol. 2013 Supp.),[17]

---

( . . . continued)

(III) ON A FINDING THAT A SUBSTANTIAL POSSIBILITY EXISTS THAT THE PETITIONER WOULD NOT HAVE BEEN CONVICTED IF THE DNA TESTING RESULTS HAD BEEN KNOWN OR INTRODUCED AT TRIAL, ORDER A NEW TRIAL.

(3) IF THE COURT FINDS THAT A SUBSTANTIAL POSSIBILITY DOES NOT EXIST UNDER PARAGRAPH (2)(III) OF THIS SUBSECTION, THE COURT MAY ORDER A NEW TRIAL IF THE COURT DETERMINES THAT THE ACTION IS IN THE INTEREST OF JUSTICE.

(4) IF A NEW TRIAL IS GRANTED, THE COURT MAY ORDER THE RELEASE OF THE PETITIONER ON BOND OR ON CONDITIONS THAT THE COURT FINDS WILL REASONABLY ASSURE THE PRESENCE OF THE PETITIONER AT TRIAL.

[17] Section 8-301(a) of the Criminal Procedure Article of the Maryland Code (2008 Repl. Vol. 2013 Supp.) provided:

(a) A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of

(continued . . . )

was considered against the backdrop of Maryland Rule 4-331(c)(1) (2013).[18] Section 8-301(a) was in issue in *Yonga*, the pertinent language of which allows a person convicted of a crime in circuit court to petition for writ of actual innocence based on a claim of newly discovered evidence that "(1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and (2) could not have been discovered in time to move for a new trial under Maryland Rule 4–331." We emphasized the evaluative component of the standard of "substantial or significant possibility that the result may have been different" and determined that the standard required an analysis of the evidence presented during a trial, a conclusion which was bulwarked by the reference in the statute to a new trial. We cited extensively to Judge Charles E. Moylan Jr.'s opinion for the Court of Special Appeals in *Yonga v. State,* 221 Md. App. 45, 68–70 (2015) in which he ably defined the process of determining "substantial or significant possibility":

---

( . . . continued)
actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:
(1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and
(2) could not have been discovered in time to move for a new trial under Maryland Rule 4–331.

[18] Maryland Rule 4-331(c)(1) (2013) provides, in relevant part:
(c) *Newly Discovered Evidence*. The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:
(1) on motion filed within one year after the later of (A) the date the court imposed sentence or (B) the date the court received a mandate issued by the final appellate court to consider a direct appeal from the judgment or a belated appeal permitted as post conviction relief[.]

There is, however, no way to compare the trial that was with the trial that might have been when there was no trial that was. Where there was no trial, it would be utter speculation to attempt to construct what the imaginary trial might have consisted of. We may not hypothesize a mythical trial. The statement of facts offered in support of the guilty plea is only minimalist. A State's Attorney's Office going before a jury would almost certainly opt for a more maximal case of guilt. We do not know, therefore, what witnesses would have been called or what, under direct and cross-examination, they might have said. We do not know whether the appellant would or would not have testified and, if he did testify, how his testimony would have held up. We do not know what medical reports might have been submitted. There would be self-evidently no way to make the prescribed comparison. Newly discovered evidence simply cannot be measured in the case of a conviction based on a guilty plea. With what cast of characters, moreover, would we people our hypothetical testing? Do we ask whether the hypothetical jury that might have rendered a guilty verdict after a hypothetical trial would probably have rendered a different verdict? Or do we ask, as in this case, whether Judge Levitz would still have accepted the guilty plea? These are very different questions. The criteria for rendering a trial verdict and the criteria for accepting a guilty plea are not remotely the same.

In every newly discovered evidence case, including newly discovered DNA evidence or other newly discovered evidence of actual innocence, there is a universally recognized procedure for measuring the persuasive weight of such newly discovered evidence. That is the "before and after" test. We first look at the evidence of guilt before the jury at the trial that led to the conviction. We then look at the newly discovered evidence. The acid test is to ask whether, if that jury had had the benefit of the newly discovered evidence as well as the evidence that was before them, would there be "a substantial or significant possibility that the result would have been different?" There is no way that such a test can be applied, however, to a conviction based on a guilty plea rather than upon a trial. The minimalist statement of facts offered in factual support of a guilty plea is no equivalent of or substitute for an actual trial. It was never intended to be.

Generally speaking, we have no firm idea what the proof of guilt might have been that the jury might have heard because there was no jury and there was no trial. Would the State have mounted an "all out" strong prosecution or simply have put on an adequate prosecution? That could make a big difference. The answer might, of course, depend not simply on the availability of the evidence but upon such other imponderables as the adequacy of the staffing of the State's Attorney's Office at a given moment, the depth of the State's Attorney's budget at a given moment, or upon how busy or unbusy the Office was with other cases on its agenda at a given moment. Might the State, in a case such as this, have mounted a full-scale effort and hired expert computer technicians to retrieve the text of the

chatting between Yonga and his victim? Such a text may not have been critical to the *actus reus* of rape, which may have been interrupted in the nick of time by the victim's mother. It could have been both revealing and devastating, on the other hand, as to Yonga's *mens rea.* It is not unheard of, moreover, where the *actus reus* is ambiguous enough that it could reasonably tilt in either direction, that a damning *mens rea* could nudge an unsympathetic jury in a given direction.

At such a purely hypothetical trial, moreover, might Yonga have invoked his right to silence? Under the facts of this case, such silence could have been fatal, whatever the Fifth Amendment instruction might be about not using his silence against him. Or if Yonga had taken the stand, how might he have stood up against rigorous and sustained cross-examination? We cannot know any of this and that is why the newly discovered evidence cannot possibly be measured against an unknown antecedent. Guilty pleas simply do not lend themselves to newly discovered evidence analysis. We would have no standard to measure the newly discovered evidence against. Q.E.D.

*Yonga,* 221 Md. App. at 68–70. Our conclusion in *Yonga* followed; only after a trial can

the substantial or significant possibility standard be applied:

Thus, the weighing mechanism required by the "substantial or significant possibility" standard adopted in Section 8–301(a)(1), and judicially determined through Rule 4–331(c)(1), can only be utilized after a jury or bench trial resulting in conviction has occurred. *See Argyrou v. State,* 349 Md. 587, 600, 709 A.2d 1194, 1200 (1998) ("It may be said that the breadth of a trial judge's discretion to grant or deny a new trial is not fixed and immutable, it will expand or contract depending upon the nature of the factors being considered, and the extent to which its exercise depends upon the opportunity the trial judge had to feel the pulse of the trial, and to rely on his or her own impressions in determining questions of fairness and justice.").

In contrast, a guilty plea contains none of the facets of a trial, evidence production and credibility determinations, for example, that informs the court when evaluating whether the proffered newly discovered evidence had a substantial or significant possibility that a different result would have occurred. When an individual pleads guilty, credibility determinations are not tested, reliability and validity are not challenged, and relevance is not an issue. The gravamen of a guilty plea is whether it was undertaken by the accused "voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf,* 545 U.S. 175, 183, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143, 153 (2005) (internal quotation omitted). A trial judge, in accepting a guilty plea, is primarily concerned with insuring its validity, not with the weight of the evidence.

24

*Yonga*, 446 Md. at 212-13.

Such is the same result here. Section 8-201(i)(2)(iii) requires "a finding that a substantial possibility exists that the petitioner would not have been convicted if the DNA testing results had been known or introduced at trial." Only subsequent to a conviction after trial can the "substantial possibility" standard be applied.

Jamison, however, asserts that *Yonga* should not pertain to the instant case for numerous reasons, one of which was that the DNA proceedings themselves constituted a trial, which ostensibly could be the subject of an evaluation. The DNA hearing, even if considered a trial, is not a proceeding against which the standard applies. Jamison was convicted after entering an *Alford* plea, not after a trial on the merits.

Jamison also asserts that the *Strickland v. Washington,* 466 U.S. 668 (1984)[19] standard of "reasonable probability" is evaluative, and is applicable to guilty pleas. The reasonable probability of attorney incompetence can be measured against errors that may arise in guilty pleas, whereas here there is insufficient evidence against which a "substantial possibility exists that the petitioner would not have been convicted if the DNA testing results had been known or introduced at trial" can be applied.

---

[19] Ineffective assistance of counsel claims under *Strickland v. Washington,* 466 U.S. 668 (1984) involve a reasonableness prong in which "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," *id.* at 687-88, and a prejudice prong in which, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694

We, therefore, hold that a person who has pled guilty cannot avail himself of post-conviction DNA testing under Section 8-201. In so doing, we are mindful that legislative action may be more appropriate, should the Legislature choose to act, because of the numerous variables that need to be considered to define the boundaries of post-conviction DNA testing, were the petitioner to have pled guilty. In New York, a Justice Task Force, considering whether to change a New York statute similar to ours, discussed the efficacy of the application of a statute of limitations in any prospective statute, a limit on post-conviction DNA testing after a guilty plea to certain offenses, and a consideration of whether the petitioner had a prior opportunity for testing, among other issues. New York State Justice Task Force, Recommendations Regarding Post-Conviction Access to DNA Testing and Databank Comparisons (Jan. 2012), *available at*: https://perma.cc/T8UB-M2GV.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

Circuit Court for Baltimore County
Case No. 03-K-90-003657
Argued: September 9, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 6
September Term, 2016

WILLIAM TODD JAMISON

v.

STATE OF MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Battaglia, Lynne A.
(Retired,
Specially Assigned)

JJ.

Opinion by McDonald, J.,
which Barbera, C.J., joins,
concurring in the judgment.
.

Filed: November 15, 2016

I join the judgment in this case, but not the Court's opinion. The Circuit Court held that Mr. Jamison is not entitled to relief under the post-conviction DNA testing statute, Maryland Code, Criminal Procedure Article ("CP"), §8-201, because the results of the DNA testing were not favorable to him. The Majority opinion affirms the Circuit Court judgment without opining on the merits of that decision. It does so by holding that Mr. Jamison may not seek relief under the post-conviction DNA testing statute because his conviction resulted from an *Alford* plea.

Unlike the Majority opinion, I would not take this occasion to extend the holding of *Yonga* – which essentially disqualifies one who has entered a guilty plea from pursuing a writ of actual innocence – to a defendant convicted as a result of an *Alford* plea. In an *Alford* plea, the defendant maintains his or her innocence, but acknowledges that the State's evidence, if believed by the factfinder, would result in the defendant's conviction. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

An *Alford* plea results in a criminal conviction, but it does not always carry the same collateral consequences as an admission of guilt.[1] For example, in *Rudman v. State Board of Physicians*, 414 Md. 243 (2010), a physician accused of assaulting a patient had

---

[1] The Majority cites *Bishop v. State*, 417 Md. 1, 20 (2010) for the proposition that an *Alford* plea is the "functional equivalent" of a guilty plea. In holding that an *Alford* plea waives challenges to adverse rulings on pretrial motions and procedural objections, the *Bishop* opinion quoted that language from an earlier opinion of the Court of Special Appeals that held only that, like a guilty plea, an *Alford* plea waives a direct appeal in a criminal case. *See Ward v. State*, 83 Md. App. 474, 480 (1990). Neither *Bishop* nor *Ward* drew any conclusions about collateral consequences. Indeed, more recently, in *Jackson v. State,* 448 Md. 387, 391 n.3 (2016), this Court stated that a defendant who enters an *Alford* plea while contesting the admissibility of evidence "retains appellate review of the suppression decision."

entered an *Alford* plea and was convicted of second degree assault. The question before this Court was whether the Board of Physicians had properly revoked the physician's license, without a hearing, under an expedited procedure for licensees convicted of crimes involving moral turpitude. This Court concluded "because Petitioner has not been found guilty of a crime of moral turpitude and has never admitted that he has committed any criminal offense, the Board does not have authority to revoke [his] license without giving him the opportunity for a hearing …" 414 Md. at 262.

As with a guilty plea, there is no trial when a defendant enters an *Alford* plea. That may make the assessment of prejudice – *i.e.,* whether there is a "substantial possibility … that the petitioner would not have been convicted if the DNA testing results had been known"[2] – more difficult, but not impossible. As the Supreme Court has noted, the assessment of a claim of ineffective assistance of counsel for failure to discover exculpatory evidence in a case involving a guilty plea "will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court that is capable of assessing the effect of evidence on the outcome of a hypothetical trial for one purpose can surely do it for the other.

In sum, I would affirm the Circuit Court judgment, but not for the reason adopted by the Majority opinion.

Chief Judge Barbera advises that she joins this opinion.

---

[2] CP §8-201(i)(2)(iii).